PEOPLE v. ANDREWS.

1. EVIDENCE—JUDICIAL NOTICE—WELL-KNOWN LANDMARK—VENUE.
   It was not error for trial court in prosecution for statutory
      rape to take judicial notice of the fact that a well-known
      landmark near which the crime was claimed to have taken
      place was within the jurisdiction of the court (CLS 1956,
      § 750.520).

2. VENUE—PRESUMPTIONS—INFERENCES.
   Venue will not be presumed, but it may be inferred from the
      proof of circumstances.

3. SAME—EVIDENCE—REOPENING PROOFS.
   Venue may be established by testimony given either by the
      State or the accused, and it is sufficient if it is in evidence
      when the case is finally submitted to the jury, it being within
      the discretion of the court to reopen the case to allow the
      taking of proofs to establish it.

4. NEW TRIAL—HEARING—EVIDENCE—RECANTATION.
   It was proper for trial court to take testimony at hearing upon
      motion for new trial, based upon strength of recanting affidavit
      of complaining witness, the 11-year-old daughter of defendant
      in prosecution for statutory rape (CLS 1956, § 750.520).

5. SAME—RECANTATION—PERJURY.
   Courts examine the recanting affidavits of witnesses who seek to
      convince them of former perjury with the utmost care, and
      will not generally order a new trial as they are not usually
      impressed by recantations under such circumstances.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence §§ 50, 59.
[2] 20 Am Jur, Evidence § 1220.
[3] 53 Am Jur, Trial § 123.
[4] 39 Am Jur, New Trial § 198.
[5, 7] 39 Am Jur, New Trial § 169.
  Statements by a witness after criminal trial tending to show
     that his testimony was perjured, as ground for new trial.  158
     ALR 1062.
[6] 39 Am Jur, New Trial § 201.

6. SAME—DISCRETION OF COURT.
> The grant or denial of a new trial rests in the sound discretion
> of the trial court and is not disturbed without a clear showing
> of abuse of discretion.

7. RAPE—NEW TRIAL—DISCRETION OF COURT—RECANTATION.
> Denial of a new trial in prosecution of statutory rape upon
> 11-year-old daughter of defendant *held,* not an abuse of dis-
> cretion, where over a period of 9 months the complaining
> witness had consistently related the same story and recanted
> it 6 days after being released from juvenile detention home
> some 6 months after the trial, as elicited from testimony
> taken at hearing on motion for new trial based upon the re-
> cantation of the complaining witness (CLS 1956, § 750.520).

Appeal from Gratiot; Cash (Paul R.), J.   Sub-
mitted April 14, 1960.   (Docket No. 57, Calendar
No. 48,067.)   Decided July 11, 1960.

Otis Andrews was convicted of statutory rape.
Affirmed.

*Paul L. Adams,* Attorney General, *Samuel J. Tori-
na,* Solicitor General, and *Fred H. Passenger,* Prose-
cuting Attorney (*Kenneth D. Plaxton,* of counsel),
for the people.

*Leighton & Andrews* (*Vernon J. Andrews,* of
counsel), for defendant.

SMITH, J.   There are 2 issues in this criminal ap-
peal.   One relates to venue and the other to the
problem of the recanting witness.   Enough of the
sordid facts will be given to frame a context for
discussion of these issues.

The appellant was charged with statutory rape[1]
upon his then 11-year-old daughter.   In the evening
of the day on which the offense was alleged to have
been committed, her father took her in his car to

---

[1] CLS 1956, § 750.520 (Stat Ann 1954 Rev § 28.788).—REPORTER.

purchase groceries. It was a Nash automobile and the seats could be made down into a bed. Her father, she says, took her out near the Michigan Baptist Children's Home, "1, 2, or 3 yards down from a house on a side road on the left hand side," where he removed her bluejeans and had sexual intercourse with her. She testified that this had been going on for 3 or 4 years, and that, with the exception of her father, she had never had sexual intercourse with any other person. In addition she stated that she had told her mother of the occurrence shortly after her father and mother had had a bad quarrel and there had been talk of separation, and of the custody of the children. She did not want to go with her father, she said, because she knew "if I stayed with him it would happen again."

Subsequently, she testified, she told her grandmother what had happened, following which she was questioned by police officers and the prosecuting attorney, to whom she told substantially the same story.

In defense the appellant argued improbability of the offense having occurred within the time limits suggested, lack of corroboration, conflicts in the story of the complaining witness, and alibi. These were all matters properly to be considered by the jury, and we are not persuaded of error in their verdict against the appellant.

In addition, the appellant asserts that venue was not properly established. This question was first raised by him after the people had rested and his opening statement had been made. After argument in chambers the trial judge held that he would take judicial notice of the fact that the Michigan Baptist Children's Home was within the jurisdiction of the court. In this there was no error. The rule appli-

cable is stated in Wharton's Evidence in Criminal Cases,[2] in the following terms:

"Venue will not be presumed, but it may be inferred from the proof of circumstances. Where a crime is shown to have been committed in a particular location or at or near a well-known landmark, knowledge of such landmark by the jury may be presumed. The jury is presumed to have some knowledge of local geography, such as the location of towns, precincts, creeks, permanent structures, et cetera. Consequently, proof that a crime was committed at a place which is well known may be sufficient to show that the crime was committed within the jurisdiction of the court. Proof has been held sufficient to take a case to the jury where it showed that the offense was committed in a place locally known by a particular name. However, a jury is not presumed to know the location of particular homes."

It was also established on the record, later, through the cross-examination of a defense witness, that Michigan Baptist Children's Home was within the jurisdiction. "I know," testified one witness, "it is in Gratiot county." That such testimony was elicited during the defense of the case is immaterial,[3] since it was within the discretion of the trial court to have allowed the prosecution to reopen its case for such proofs,[4] had he felt any misgivings on this issue.

The matter of the recantation of the complaining witness poses a more serious problem. She was

---

[2] 1 Wharton, Evidence in Criminal Cases (11th ed), § 111.

[3] See 23 CJS, Criminal Law, § 914, p 169:

"It is not necessary that the venue should appear from the State's evidence. It may be established by the testimony given by accused, or the jury may infer it from the evidence on both sides. * * * The fact that evidence showing the venue was not before the court when accused made a motion for a peremptory instruction to acquit him does not prevent its consideration by the jury if it is in evidence when the case is finally submitted to the jury."

[4] *People* v. *Eger*, 299 Mich 49.

released from the juvenile detention home approximately 6 months after the trial. Within a week thereafter she had executed her recanting affidavit. In it she swore, in substance, that she had previously testified falsely, because when her father had been drinking he would beat her mother and that she thought she hated him; furthermore, that on the evening in question her father had not molested her; and that she had not previously told the truth because "everyone told me that I would be punished for changing my story and would be a juvenile delinquent."

The trial court properly took oral testimony upon the motion for new trial, which was made on the strength of the recanting affidavit. Were we required to choose between the versions upon the printed record we might be hard put to separate the true from the false. But the trial judge was there and he himself questioned the unfortunate girl at some length. His conclusions reveal a careful analysis of the testimony and of the circumstances. He held, in part, as follows:

"Many, many times before the trial the complaining witness told various people that her father had raped her. *First,* to her mother; *second,* to her grandmother; *third,* to her aunt; *fourth,* to Corporal Buchanan of the Michigan State police; *fifth,* to Mrs. Dawson of the Alma police; *sixth,* to the prosecuting attorney in the presence of her aunt, grandmother, Mrs. Dawson, and Corporal Buchanan; *seventh,* again under oath at the preliminary examination held September 20, 1956.

"Many times from the preliminary examination to the date of the trial the prosecuting attorney gave her plenty of chance to change her story. After the trial there was a hearing in the probate court, in which were present the present prosecutor, Mr. Passenger; the prosecutor at the time of the trial, Mr.

Plaxton; the county welfare agent, Mrs. Mason; and the probate judge. At none of these numerous times did she show any indication that she wished to change her story.

"The complaining witness, while in the detention home, had 9 months to deny her testimony (September 7, 1956, to May 29, 1957) but did not. Six days after she was home she recanted her testimony completely and claimed that her story of 9 months was false. (May 29, 1957, to June 4, 1957.)

"The reasons why she decided to change her story are interesting. She said that she didn't want to be called a juvenile delinquent, but she didn't know what a juvenile delinquent was and it didn't mean anything to her and she didn't know whether she was one or not. She was also thinking that her father should not have gotten so long a sentence. She thought that she hated her father and wanted him punished for hurting her mother and drinking, but she testified that the result of the trial and the sentence caused her to change her mind.

"To grant a new trial based upon the fact that in 6 days after being in her own home she decided she had committed perjury on a story she had maintained for 9 months would be lending approval to what might become a very dangerous practice in criminal procedure."

The courts examine the recanting affidavits of witnesses who seek to convince them of their former perjury with the utmost care. *People* v. *Smallwood,* 306 Mich 49 (147 ALR 439). The general rule is, broadly stated, that:[5]

"A new trial will not be ordered on proof of a witness' statement tending to show that his testimony was perjured; and this is true regardless of the showing as to whether or not the witness swears to the statement."

[5] 39 Am Jur, New Trial, § 169, at p 175.

We would not have this taken as a hard and fast rule. Actually, in this jurisdiction, the grant or denial of a new trial rests in the sound discretion of the trial court, *People* v. *Lowenstein*, 309 Mich 94, and we do not disturb without a clear showing of abuse of such discretion. Such abuse we do not here find.

Affirmed.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.