## PEOPLE *v.* CROSBY

1. ASSAULT AND BATTERY — CRIMINAL LAW — ATTEMPTED ROBBERY ARMED — TRIAL — JURY INSTRUCTIONS.

> Claim of defendant who was convicted of assault with intent to rob being armed that the trial court erred in instructing on the included charge of attempted robbery armed will not be considered on appeal where there was no objection at trial to the instructions as required by court rule (CL 1948, §§ 750.89, 750.92; GCR 1963, 516).

2. CRIMINAL LAW—DUE PROCESS—ASSISTANCE OF COUNSEL—LINE-UP—PROSPECTIVE APPLICATION.

> Right of criminal suspect to be represented by counsel at lineup, held to be a constitutional right by the Supreme Court of the United States on June 12, 1967, is to be applied only to lineups occurring after that date.

3. CRIMINAL LAW—TRIAL—EVIDENCE—STATEMENT OF DEFENDANT—CROSS-EXAMINATION—WITNESSES.

> Defendant's counsel, by bringing out on cross-examination of a prosecution witness, a part of an exculpatory statement made

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 545.
[2] 21 Am Jur 2d, Criminal Law §§ 312, 313.
[3] 58 Am Jur, Witnesses § 562.
[4] 21 Am Jur 2d, Criminal Law § 315.

by defendant, opened the door to the admission of the balance of the statement and waived defendant's right to object to the admission of the statement which otherwise may have been objectionable on constitutional grounds.

4. CRIMINAL LAW—COUNSEL—COMPETENCY—TRIAL STRATEGY—WITNESSES—FAILURE TO CALL.

Calling witnesses or having a defendant take the stand is considered to be trial strategy and appellate courts never try to second guess trial counsel on matters of strategy; thus, the failure of defendant's trial counsel to call a witness does not, of itself, constitute incompetency.

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 June 3, 1969, at Detroit. (Docket No. 5,887.) Decided August 28, 1969. Leave to appeal denied November 17, 1969. See 382 Mich 794.

David Crosby was convicted of assault with intent to rob being armed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Lawrence A. Bohall,* for defendant on appeal.

Before: HOLBROOK, P. J., and McGREGOR and BRONSON, JJ.

HOLBROOK, P. J. On June 12, 1967, defendant David Crosby, was convicted of the crime of assault with intent to rob and steal being armed[1] before the Recorder's Court for the City of Detroit and a jury.

---

[1] CL 1948, § 750.89 (Stat Ann 1962 Rev § 28.284).

Defendant was sentenced to prison. Present counsel on appeal was not defendant's attorney at trial.

Briefly stated, the record shows that the complainant Mary Harris was attacked at approximately 2:25 a.m., October 5, 1966, in the city of Detroit. She testified that defendant knocked her down, tried to snatch her purse, and cut at her with a knife. Defendant gave timely notice of the defense of alibi, claiming he was at the home of a Mrs. Flowers until about 2:25 or 2:30 a.m. the morning in question. Defendant on appeal raises four questions for determination which are restated and considered in order.

1. *Did the trial court commit prejudicial error in charging the jury on the included offense of "attempted robbery armed"?*

Defendant asserts that although the court properly instructed the jury on all the elements of the crime charged, he should have, when instructing on the included charge of attempted robbery armed,[2] repeated the elements making up the main charge. We do not find any merit in defendant's contentions. The instruction in question was requested by defendant's counsel. It immediately followed the charge concerning the elements of the crime charged. Counsel for the defendant indicated on the record that the instructions as given were satisfactory to him. This alleged error is raised for the first time on this appeal. There was no objection to the instructions made in accordance with GCR 1963, 516. We conclude that the claimed error was waived under the facts in this case,[3] and further that the claimed error was not saved for review.

2. *Was defendant's appearance at the showup violative of defendant's constitutional rights?*

---

[2] CL 1948, § 750.92 (Stat Ann 1962 Rev § 28.287).
[3] *People* v. *Van Driesche* (1908), 154 Mich 158.

Defendant claims that because the showup was conducted at a time when he was not represented by counsel and by reason of the circumstances under which it was conducted his constitutional rights were violated. This assertion is based upon the reasoning contained in the rules laid down in the case of *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149). In *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199), it was determined that *Wade, supra,* would not be retroactive and that it would apply to all lineups occurring after June 12, 1967. The law applicable to the instant case is that prevailing prior to *Wade, supra,* which precludes our deciding the issue on the basis of the rules set forth in the *Wade* case. *People* v. *Schrader* (1968), 10 Mich App 211. We find no error here.

3. *Was the admission of an exculpatory statement, made by defendant and used by the people on rebuttal to impeach the defendant, reversible error?*

The record discloses the following testimony of Detective David Mason:

"*Q.* That is all that you had to do with it, the showup? There was no statement made by the defendant in this case?
"*A.* He made a statement.

\* \* \*

"*Mr. Valenti:* Very well. But now the officer in charge indicates yes he did make a statement.
"*The Court:* In view of that, I have ruled that you may go in and ask Detective Mason what was said.
"*Mr. Valenti:* Fine. Mr. Prosecutor objected to that.
"*The Court:* I have overruled it and I am going to give everybody a breather for ten minutes.
"(Whereupon a short recess was taken.)

"(Whereupon the jury returns to the courtroom at 3:24 p.m.)

"*Q. (By Mr. Valenti, continuing.)* Officer Mason, just before court adjourned, you stated that you had taken a statement from this defendant. What did you mean by that? Did you interrogate the defendant?

"*A.* Yes, I did.

"*Q.* And what did that interrogation consist of?

"*A.* Well, the defendant had been interrogated—

"*The Court:* Well, now, isn't there some foundation that you want to lay for that, Mr. Valenti?

"*Mr. Valenti:* Well, the only question actually wasn't a statement. It was in the nature of an interrogation after he was arrested. If you asked him what his name was and so forth; that is the answer, and how much further he went.

"*The Court:* Well, all right. If you don't want the foundation laid, go ahead.

"*A.* I advised the defendant of his constitutional rights. I showed him this form which he had signed earlier that morning in front of another detective and asked him if that was his signature and he told me that it was. I asked him if he understood everything on here and he said that he did. I then told him that he had been identified in a showup by the complainant and told him what the complainant said. I asked him if he could tell me what he did on the 4th and on the 5th, as far as he could remember. And everything he told me I wrote down.

"*Q.* Did you interrogate him, ask him the question in connection with this offense?

"*A.* Yes, I did.

"*Q.* What did he say with reference to the alleged commission of this offense?

"*A.* He denied it.

"*Mr. Valenti:* That's all."

Thereafter the court permitted the prosecuting attorney to go into the other facts concerning the statement, ruling that defendant had opened the

door. A foundation permitting the statement to be admitted was required by the court prior to its admission. The record discloses the following:

"*Q. (By Mr. Connor, continuing)*: You mentioned a form that the defendant signed and that you showed the defendant?

"*A.* Yes, sir.

"*Q.* Do you have that form with you today?

"*A.* Yes, I do have.

"*Q.* Can I see that, please?

"*Mr. Connor*: Would you mark that.

"(Whereupon defendant's proposed exhibit 1 was marked for identification.)

"*Q.* I show you what has been marked people's proposed exhibit one. Can you identify and recognize that object?

"*A.* Yes, I can.

"*Q.* Is that the form that you showed him that has his signature on it?

"*A.* Yes, sir.

"*Q.* What were the questions and answers you elicited from the defendant relating to his constitutional rights prior to the time you questioned him about events that took place in the early morning hours of October 5?

"*A.* This is the Detroit police department constitutional rights certificate of notification. It says, and I read it to the defendant: I understand, one, that I have a right to remain silent. I don't have to answer any questions put to me or make any statements; two, any statements that I make or anything that I say can be used against me in a court of law; three, I have a right to have an attorney, lawyer, present before answering questions or make any statements; four, if I cannot afford an attorney, lawyer, one will be appointed for me by the court prior to any questioning; five, I can decide at any time to exercise my rights and not answer any questions or make any statement.

"Then it says: I understand that these are my rights under the law; I have not been threatened or promised anything and I now desire and agree to answer any question put to me or make a statement.

"*Q.* Is there a place for signature underneath there?

"*A.* Yes.

"*Q.* Whose signature appears there?

"*A.* David Crosby.

"*Q.* Did you at any time threaten this defendant at any time to get a statement?

"*A.* No.

"*Q.* Did you make any promises to him?

"*A.* No, I didn't.

"*Q.* Did he at any time indicate to you an unwillingness to make a statement?

"*A.* No.

"*Q.* What were the questions you asked and the answers you received?

"*A.* As I stated before, I told him what he was charged with, what accusations had been made against him. He denied it and I asked him if he would tell me what he did the previous night, October 4, early morning of October 5th, 1966. The defendant stated that he went home about 11:30 p.m. on October 4, 1966. That he entered the house with his front door key; says that the bathroom light was on at the time, his mother was on the sofa in the living room. The defendant states that he stayed for about 10 minutes, left, went to a store across the street, stayed five minutes, went back and his mother was not in the house. Defendant states that he was with a colored male about 22 years old named Floyd, who lives on Euclid and Twelfth; didn't know the address of Floyd or last name. He stated that he and Floyd went to his, Floyd's girlfriend's house, Sandra Flowers, a Negro girl, 17, at 1154 Oakland; states that he arrived there 11:45 on the 4th and Floyd stayed outside in the car; he left the house about 2 a.m. The defendant

states that Floyd then drove him home. Defendant states that he went into the house and Floyd left. Defendant states that mother and brothers were asleep. Defendant stated that he got up about 6 a.m. on the 5th, got dressed, made coffee and left the house about 6:20 a.m. Defendant states that a Gerald Patterson went home with him from girlfriend's house and spent the night and that they left at the same time. He tells me that Floyd owns a gray 1960 Ford."

Thereafter defendant took the stand and testified that he left Sandra Flowers' home at 2:25 or 2:30 a.m. on the day in question. On rebuttal Detective Mason was recalled and testified over objection that defendant had told him that it was 2 a.m. when he had left the house. Under the facts in this case, defendant's counsel by bringing out a part of the statement on cross-examination of the officer, opened the door to the admission of the balance of the statement and waived defendant's right to object to the admission of the statement, which otherwise may have been objectionable on constitutional grounds, 21 Am Jur 2d, Waiver of Rights, § 219, p 258.

4. *Was defendant's trial counsel incompetent?*

Defendant's present counsel asserts that the failure of trial counsel to call a third alleged alibi witness constituted incompetency. The matter of calling witnesses or having the defendant take the stand is considered to be trial strategy which is best left to trial counsel. It is true, after the strategy has been selected and the defendant has been convicted, it is obvious it might have been better had that strategy not been pursued. Appellate courts never try to second guess trial counsel on matters of strategy. *People* v. *Martin* (1920), 210 Mich 139; *People* v. *Foster* (1920), 211 Mich 486.

It has also been ruled that failure to call a witness or witnesses does not, in and of itself, constitute incompetency. *Ingram* v. *United States* (1954), 93 App DC 307 (209 F2d 818); *Bolden* v. *United States* (1959), 105 App DC 259 (266 F2d 460); *State* v. *Sims* (1950), 241 Iowa 641 (40 NW2d 463), *cert den* (1950), 340 US 833 (71 S Ct 58, 95 L Ed 612). Defendant's fourth claim of error is not tenable under the facts in this case.

Affirmed.

All concurred.