PEOPLE *v.* GARDNER

Opinion of the Court

1. Criminal Law — Evidence — Exculpatory Statement — Coercion — Explanation of Defendant's Rights.

No error was committed in receiving the testimony by a police officer of an "exculpatory statement" made by defendant to the officer where there was no evidence of physiological or psychological coercion in obtaining it and testimony was unrebutted that defendant's rights were fully explained to him before he told his story.

2. Criminal Law—Instructions—Joint Trial—Defenses—Appeal and Error.

Trial court's instructions to the jury that inconsistent defenses were offered by two defendants in a joint trial was error requiring reversal where no inconsistent defenses were offered by defense counsel.

3. Criminal Law—Plea of Not Guilty.

A plea of not guilty puts in issue every element of the crime, and by itself advances no explanation or exculpatory theory.

4. Trial—Instructions—Misstatement of Defense—Appeal and Error.

Trial court's charge to the jury which misstated defendant's position was error.

5. Criminal Law—Assistance of Counsel—Joint Trial—Constitutional Law.

Defense counsel, who represented defendant and his co-defendant at a joint trial, recognized the inconsistencies of the defenses

---

References for Points in Headnotes

[1] 29 Am Jur 2d, Evidence § 611.
[2, 4] 53 Am Jur, Trial § 554.
[3] 21 Am Jur 2d, Criminal Law § 467.
[5] 21 Am Jur 2d, Criminal Law § 309.
[6] 21 Am Jur 2d, Criminal Law §§ 309, 315.

of the two defendants as they must appear to the jury by his objection to the court's instructions and in his closing argument and this fact alone effectively deprived defendant of the benefit of the undivided loyalty of his counsel that the Constitutions assure him is his right (US Const, Am 6; Const 1963, art 1, § 20).

### DISSENTING OPINION

### BLACK, ADAMS, and T. E. BRENNAN, JJ.

6. CRIMINAL LAW — JOINT TRIAL — ASSISTANCE OF COUNSEL — CONFLICT OF INTEREST — EXTRAJUDICIAL STATEMENTS — EVIDENCE — TRIAL STRATEGY — APPEAL AND ERROR.

*Effective assistance of counsel was not denied a defendant in a joint trial with a codefendant in a criminal case based on his claims of a conflict of interest between the defendants who were represented by the same attorney and acts of the attorney during the trial, because the sole source of any conflict of interest was the proper admission of defendant's oral exculpatory statement in evidence against him and the acts of the attorney were those of omission constituting trial strategy as to which appellate courts never try to second-guess trial counsel.*

Appeal from Court of Appeals, Division 1, Holbrook, P. J., and McGregor and Bronson, JJ., affirming Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted March 2, 1971. (No. 30 January Term 1971, Docket No. 52,629.) Decided August 27, 1971. Rehearing denied September 28, 1971.

19 Mich App 291 reversed.

Johnnie Sylvester Gardner was convicted of assault with intent to rob and steal being armed and assault with intent to commit murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Harold Koenigsberg (Justin C. Ravitz,* of counsel), for defendant.

T. G. KAVANAGH, J. The opinion of Judge HOLBROOK for the Court of Appeals succinctly postures this case:

"Defendants Johnnie Sylvester Gardner and Wavie R. Williams, Jr., were tried in a joint trial and convicted by a jury in the recorder's court for the city of Detroit, on June 16, 1967, of the crime of assault with intent to rob and steal being armed (CL 1948, § 750.89 [Stat Ann 1962 Rev § 28.284]) and the crime of assault with intent to commit murder (CL 1948, § 750.83 [Stat Ann 1962 Rev § 28-.278]). Both defendants were represented at the trial by the same retained counsel. Neither defendant took the witness stand. Defendant Gardner was sentenced to prison for a term of 11 to 20 years and defendant Williams for a term of 17 to 35 years. Evidence was presented by the prosecution showing that on the evening of November 11, 1966, three men entered the Y and B Market, armed with pistols, and proceeded to demand money from owner Albert Yezbick and his son, Victor Yezbick. They departed after one of the men shot and wounded Albert Yezbick. Victor Yezbick, using a gun which was kept in the store, fired three shots at the men as they fled onto Milwaukee street from John R. street. A passerby, Thomas Phelan, armed under a concealed weapon permit, testified to having chased the three men on foot after they fled from the store brandishing weapons, with Phelan firing shots at them and at the get-away car located on

Milwaukee, around the corner from the Y and B Market. Both described the get-away car as a blue Oldsmobile convertible with white top.

"Witness Phelan testified on direct examination in part as follows:

" '*Q.* Do you know if there was anyone in the car, in the Oldsmobile, when they ran to it?

" '*A.* Yes, there was.

" '*Q.* When they got in there would be four persons altogether?

" '*A.* Yes.

" '*Q.* Could you identify the person that was in the car?

" '*A.* No.

" '*Q.* What did you do then when they got in the car?

" '*A.* I opened fire on the automobile.

" '*Q.* How many shots in all did you fire?

" '*A.* Six; one in the tire, one in the bumper, three into the trunk and one in the back window.'

"A 1960 Oldsmobile meeting this description was examined by a patrolman at a Detroit motel on December 3, 1966. He testified that the car contained numerous holes in the body, appearing to be bullet holes, and in the convertible top, side and rear view mirror. Defendant Gardner, taken into custody at that time, stated to the patrolman that the car in question was his. The car was subsequently determined to have been registered to a John S. Gardner.

"Wiley Richardson, Jr., owner of a service station a block from the scene of the crime testified that he had identified defendant Gardner in a lineup sometime after November 11, 1966, 'maybe about a week later, two weeks later,   *   *   *   I couldn't recall.' The witness identified Gardner again, at the trial, as having entered his station on foot at approximately 6 o'clock on the night in question accompanied by two companions. Gardner asked to use the rest room, got the key and went to the outside rest room. The witness testified that after Gardner

brought the key back the witness looked out the window and saw three men going toward the Y and B Market. He did not know whether Gardner was one of the three.

"Defendant Gardner was not identified as having been in the Y and B Market at the time of the offense. Defendant Williams was identified by Victor Yezbick in a lineup and again at trial. * * *

"[A] customer who was in the store when the three armed men entered, identified Williams as having been one of the three men." (19 Mich App 291, 294–298 [1969].)

The testimony of the police officer who questioned Gardner at the time he was taken into custody was in part:

"*A*. He told me that he was driving—that, 'We were driving down John R.' and they pulled over at Milwaukee and John R, I believe it was, so that he could go to the bathroom. He told me that he went into the bathroom, came back to the car, and when he came back to the car Wavie Williams, Herbert Farmer and John Anthony said they were going to the store to get some beer to check it out. He told me that he was scared and that he said he asked them what they were going to do, and they walked on to the store. He stated that he remained in his car. He walked back to the corner, got out of the car once and walked back to the corner and looked around the corner and he saw guns coming out and heard all of this shooting. He stated at this time that he got scared and ran and got into his car and started it up and attempted to pull away from the curb. I believe he stated that he had a little trouble getting out. I don't know if because of the parked cars or what.

"But by this time he heard all the shooting and Wavie Williams came and got in the car and he asked him, 'Man, what have you done?' and he stated, 'Get out of here quick.' And Wavie Williams was

followed in the car by John Anthony, and at this time he almost pulled away but Herbert Farmer jumped in and at the last minute, and he stated that bullets were flying everywhere and one flew by his head and one went by the right window and either bullets or glass nicked Herbert Farmer on the head and he stated that he drove home at this time and told his wife that he was in serious trouble or that the car was in serious trouble. I don't remember which. And he asked her to report it stolen, which she did."

The Court of Appeals affirmed defendant Gardner's conviction and although four errors were asserted on appeal, we find three to be without merit: 1) defendant's "exculpatory statement" was improperly admitted, 2) there is no evidence of common enterprise, 3) the evidence, being entirely circumstantial does not negative every theory of innocence consistent with the facts proven.

The trial court's instruction accurately and adequately covered the elements of intent and common enterprise and if the jury believed the witnesses produced, there is ample evidence from which to infer defendant's guilt beyond a reasonable doubt.

Regarding the "exculpatory statement" of the defendant Gardner which was recounted by the police officer, there appears no evidence of physiological or psychological coercion in obtaining it, and the testimony that defendant's rights were fully explained to him before he told his story was unrebutted. We conclude that no error was committed in receiving the testimony.

The one asserted error which requires our reversal of defendant's conviction, however, is complex and convoluted.

The defendant's appellate counsel states it:

"(a) Joint representation by single retained counsel of Defendant Gardner and his co-defend-

ant was reversible error where the defenses of the two parties charged were inconsistent and conflicting and where Gardner's representations was undoubtedly not as effective as it might have been if single counsel with undivided loyalties had represented him, and where there was no intelligent and knowing waiver of Gardner's right to effective assistance of counsel.

(1) If counsel's joint representation of co-defendants with conflicting interest is not deemed reversible error, then Defendant Gardner for this and other reasons was denied his constitutional right to effective assistance of counsel."

This very statement of the claimed error underscores the unacceptability of the course of conduct pursued here.

*No inconsistent defenses were offered by defense counsel, and the trial court's instructions to the jury that they were offered is the error we find requiring reversal.*

The formal defenses offered on behalf of both defendants were simply their pleas of not guilty. Such plea puts in issue every element of the crime, and by itself advances no explanation or exculpatory theory.

When the trial court charged the jury:

"On the other hand, it is the defendant's position that he indeed drove the automobile away but he did so after he heard the shots and he was getting away from the danger; that he did not know that the defendants, the other individuals rather, were going into the store to plan this robbery and he did not wait there and he did not flee as a result of waiting for them and all jointly agree [*sic*] to flee; he was leaving on his own and he had difficulty getting away from the curb and the time it took for him to get away from the curb, in this time, the other persons involved in the robbery jumped in the automo-

bile without his planning it or without any preconceived knowledge that that was going to occur this way,"

he misstated defendant Gardner's position. This was error. See *People* v. *King* (1970), 384 Mich 310.

If this error was not induced it was at least occasioned by the circumstances of joint representation of two defendants with *potentially* conflicting defenses.

This potentiality of conflicting defenses is the root of the problem here and it raises such fundamental questions that we deem it necessary to address ourselves to it, for it is apparent that the jury received this case as though conflicting defenses had been pleaded. Even though the courts' posturing of it so was error, we are convinced that no other reasonable inference could be drawn from the unrebutted testimony of the people's witnesses.

As the record stands in this case, even without the erroneous instruction, defendant Gardner did not have the effective assistance of counsel contemplated by the Michigan and United States Constitutions.

He could have waived it and perhaps he did, but the record before us will not support a conclusion of waiver.

The case of *People* v. *Degraffenreid* (1969), 19 Mich App 702 contains an exhaustive and illuminating discussion of the difference between the Fourteenth Amendment's guarantee of due process and the Sixth Amendment's guarantee of effective assistance of counsel *vis-a-vis* trial errors and incompetence of counsel.

In light of the statements of defense counsel in his colloquies with the court about the court's jury instructions:

"Here is the position that I am in. I am representing two defendants. If I am taking this position with one defendant [Gardner] I am more or less sabotaging the other by admitting he was there,"

and

"I have one [objection]. That is the Court's charge that it is the defendant's position that Mr. Gardner was in the car and driving away and he did not have knowledge of the events that transpired before he drove away. That would prejudice my other client. In other words, for Mr. Gardner to be in the car and not know the events that took place and considering his position, it would be inconsistent representing both defendants to assume that Mr. Gardner didn't know what was happening but yet Mr. Williams was there and was in the store. It is Mr. Williams' position he was not there,"

as well as his observation in closing argument attempting to minimize the effect of Gardner's statement:

"Now, we can all remember experiences when we were children perhaps, when we got cornered for something we weren't responsible for and sometimes some of us may have made alibis, perfectly innocent of what we were accused of. We made alibis and then got tripped up on the alibis. But that does not mean that you are responsible for the basic premise, for the charge in question."

We are led inexorably to the conclusion that defense counsel recognized the inconsistencies of the defenses *as they must appear to the jury.*

This fact alone effectively deprived the defendant of the benefit of the undivided loyalty of his counsel that the Constitutions assure him is his right.

For the error in instruction above described the conviction of defendant Gardner is set aside and the matter remanded for a new trial.

T. M. KAVANAGH, C. J., and SWAINSON, J., concurred with T. G. KAVANAGH, J.

WILLIAMS, J., concurred in the result.

BLACK, J. (*dissenting*). I agree with our standard majority when its members say that three of the four errors assigned by defendant Gardner are without merit. As for that defendant's fourth assignment, I agree again with the Brethren four when they say that it is "complex and convoluted" (What magnificent understatement! See it quoted, *ante* at p 397). There our agreement ends.

The fourth assignment, upon which the majority relies for disposition of this latest appeal from an affirmed conviction for serious felony, is that defendant Gardner was denied the effective assistance of counsel, citing *Glasser v. United States* (1942), 315 US 60 (62 S Ct 457, 86 L Ed 680).

For my part, I am satisfied that Division 1 considered, reasoned and decided the fourth assignment properly, and that it is equally without merit. For the reference just made, see Judge HOLBROOK's opinion on rehearing, supported as it was by the other members of the panel (19 Mich App 291, 306–308).

I would affirm and therefore dissent.

ADAMS, J., and T. E. BRENNAN, J., concurred with BLACK, J.