PEOPLE v GALLAGHER

Docket No. 54497. Submitted June 12, 1981, at Detroit.—Decided May 19, 1982. Leave to appeal applied for.

Raymond Gallagher was convicted of conspiracy to commit first-degree murder, Wayne Circuit Court. The court, Victor J. Baum, J., granted defendant a new trial on the basis of ineffective assistance of counsel because of a conflict of interest and a miscarriage of justice. The people appealed. The Court of Appeals remanded for an evidentiary hearing. Following that hearing, the Court of Appeals granted leave to appeal. *Held:*

1. A trial judge does not abuse his discretion in granting a new trial based on ineffective assistance of counsel where the record supports a finding that a conflict of interest of defense counsel may have prejudiced the trial and that no valid waiver occurred. The Court of Appeals was convinced that the trial court did not abuse its discretion in finding that a conflict of interest *may* have prejudiced defendant's trial.

2. The granting of a new trial is justified only where it is clearly established that an irregularity in a trial resulted in prejudice sufficient to deprive the defendant of a fair and impartial trial. The trial court erred in granting a new trial based on a misscarriage of justice.

Affirmed.

H. R. GAGE, J., dissented in part. She agreed that no miscarriage of justice occurred, but found no basis for concluding that a conflict of interest was established. She would affirm the defendant's conviction.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 772.
  58 Am Jur 2d, New Trial § 212.
[2] 58 Am Jur 2d, New Trial § 212.
[3] 21A Am Jur 2d, Criminal Law §§ 748 *et seq.*, 985.
[4] 58 Am Jur 2d, New Trial §§ 160, 161.
[5, 6] 58 Am Jur 2d, New Trial §§ 29, 31.

Opinion of the Court

1. New Trial — Appeal.

Granting or denying a motion for a new trial is within the sound discretion of the trial court and that discretion, if not abused, cannot be interfered with on appeal.

2. New Trial — Motions and Orders.

A trial judge acts within his discretion in granting a new trial if the reasons assigned by him for his action are legally recognized and the reasons are supported by any reasonable interpretation of the record.

3. Criminal Law — Assistance of Counsel — Effective Assistance.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.

4. New Trial — Assistance of Counsel — Conflict of Interest.

A trial judge does not abuse his discretion in granting a new trial based on ineffective assistance of counsel where the record supports a finding that a conflict of interest of defense counsel may have prejudiced the trial and that no valid waiver occurred.

5. Criminal Law — New Trial.

The granting of a mistrial or a new trial is justified only where it is clearly established that an irregularity in a trial resulted in prejudice sufficient to deprive the defendant of a fair and impartial trial.

Partial Concurrence and Partial Dissent by H. R. Gage, J.

6. Criminal Law — New Trial — Assistance of Counsel — Conflict of Interest.

*A defendant must establish an actual conflict of interest which adversely affected his lawyer's performance in order to establish ineffective assistance of counsel sufficient to support the grant of a new trial.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Prin-

cipal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Robert H. Roether,* for defendant on appeal.

Before: D. C. Riley, P.J., and Cynar and H. R. Gage,* JJ.

D. C. Riley, P.J. On November, 1978, defendant was charged, along with codefendant Henry Hence, Jr., with first-degree murder, MCL 750.316; MSA 28.548, and conspiracy to commit first-degree murder, MCL 750.157a; MSA 28.354(1). Also named as coconspirators, but not codefendants, were Phillip Edmonds and Norman Robinson. Following a lengthy joint jury trial, both defendants were convicted as charged. On November 29, 1979, defendant Gallagher was sentenced to concurrent terms of life imprisonment on each count. The people appeal from an order granting defendant a new trial. Defendant Hence has appealed his conviction separately.

This case arose from the fatal shooting of Leon Sommers on May 11, 1978, at his home in Taylor, Michigan. The victim was found lying on a couch in the living room of his home with his hands bound behind his back. He had been shot through the head four times at close range.

The transcript reveals that Sommers was allegedly involved in stolen auto parts and/or drug trafficking in the downriver Detroit area. Many of the trial witnesses were allegedly involved in these illegal activities, as were defendant and codefendant Hence.

Five weeks prior to Sommers's death, defendant was convicted of interstate transportation of a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

stolen motor vehicle by an Ohio federal district court, based largely on the testimony of Sommers. The prosecution's theory in the instant case was that between April 18, 1978, and May 13, 1978 (*i.e.*, postconviction and presentencing on his federal conviction), a conspiratorial meeting was held at which Gallagher, outraged by Sommers's testimony against him, hired Phillip Edmonds, who in turn hired Robinson and Hence, the "hit men", to kill Sommers.

According to defense counsel, the defense strategy was to establish that defendant was not guilty beyond a reasonable doubt. This was sought to be accomplished in three ways. First, defendant denied any complicity in the conspiracy to kill Sommers. While he admitted that he attended a meeting with some of the "conspirators", defendant claimed that the purpose of the meeting was not to plan a murder but to arrange the theft of a car. Second, defendant sought to show that the prosecution witnesses were not credible in their rendition of the events which occurred. Finally, while not attempting to "prove" who actually arranged the contract on Sommers, defendant attempted to show that others had a motive to kill Sommers.

Following his conviction, defendant's trial counsel moved for a new trial alleging, essentially, a miscarriage of justice and newly discovered evidence. Trial counsel was then replaced by present appellate counsel who obtained permission to review the trial record for additional potential error.

Appellate counsel subsequently filed a series of amended motions for new trial. Although these motions alleged numerous trial errors, the decisive issue, and the issue upon which this appeal hinges, concerned whether defendant was denied the effective assistance of counsel due to an alleged conflict

of interest between defense counsel and Mr. X, a former client. The motion alleged that defense counsel failed to investigate the possibility that Mr. X ordered the "hit" on Sommers and that defense counsel failed to present Mr. X adequately as an "alternate suspect".

The various motions for new trial were argued by defendant's appellate counsel at hearings held in early July, 1980. Defendant's trial counsel, although informed of the hearings, failed to appear. Approximately 12 witnesses testified at the hearing, including trial counsel's investigator.

In an oral opinion rendered July 15, 1980, the trial judge granted the motion for a new trial based on the ground that counsel's conflict of interest had denied defendant effective assistance of counsel. While specifically noting that his finding of ineffective assistance of counsel did not result from any want of skill on the part of counsel, he nevertheless concluded that there was "strong evidence" showing that defense counsel had managed and shaped the preparation of the defense at trial so as to shield his former client, Mr. X.

This Court initially denied the people's application for leave to appeal but on rehearing granted a remand for the taking of additional testimony, especially that of trial counsel. Following the remand hearing, which took place in September, 1980, the trial judge filed a written opinion in which he reaffirmed his belief that a new trial was necessary. This decision was based on two grounds, (1) that defense counsel failed to provide defendant effective assistance of counsel as a result of a conflict of interest, and (2) that a miscarriage of justice had occurred. The people have brought this appeal by leave granted, GCR 1963, 806.2, challenging the propriety of the grant of a new trial.

At the September remand hearing, trial counsel testified that he had known an individual by the name of Mr. X since high school and that he had represented him in 1975 and 1976 in a federal narcotics case. The record also reflects that trial counsel had had several social contacts with Mr. X.

The most crucial testimony, and that which the trial judge appears to have afforded the greater weight, came from the trial counsel's investigator who interviewed 40 or more witnesses during his investigation and had put approximately 400 hours of actual work into the project.

A major area of inquiry, with regard to the investigator, concerned the initial strategy meeting which had taken place in March of 1979, shortly after trial counsel employed the investigator. According to the investigator, by the time of the strategy meeting, he had already interviewed one witness who claimed that Mr. X possibly may have been involved in the killing of Sommers. It appears to be undisputed, therefore, that by the time of the initial strategy meeting, the name of Mr. X had surfaced as at least a possible participant in the Sommers killing.

The investigator testified that trial counsel first directed him to ascertain exactly what happened at the so-called conspiratorial meetings and to locate and interview the participants who allegedly were there. Further, the investigator testified that counsel told him not to pursue inquiries regarding Mr. X. In addition, on cross-examination, it was established that defendant had provided the investigator with certain information regarding Mr. X, information which reasonably inferred that Mr. X also had a motive to kill Sommers. This information, the investigator

claimed, was forwarded to defense counsel. It also appears undisputed that trial counsel told the investigator that Mr. X was not the "killer type" in counsel's opinion and that counsel never expressly told the investigator to investigate Mr. X.

Trial counsel vigorously denied that his former representation of and social contacts with Mr. X in any way prevented him from zealously representing defendant. He testified that he told defendant, during his first prison visit with defendant, that he had represented Mr. X prior to defendant's case. According to counsel, during the various interviews he had with defendant, defendant never told him whom he believed ordered the killing although defendant did constantly suggest alternate suspects. In short, counsel defended his actions as constituting legitimate trial strategy. He denied any cover-up or conflict of interest.

In his written opinion, the trial judge concluded that a conflict of interest did arise at the time counsel received information that Mr. X very well may have been involved in the conspiracy to kill Sommers and at the time was the principal "alternate suspect". In the judge's opinion, it was clear that pursuing Mr. X as an "alternative suspect" would jeopardize Mr. X's interests, and to not pursue Mr. X as an alternative suspect would jeopardize defendant's interests.

To substantiate his conclusion, the trial judge noted the following examples of the extent to which trial counsel's defense of Gallagher was deflected by his concern for protecting Mr. X. First, he noted that, although counsel had sufficient information from several sources which pointed toward Mr. X as the principal alternate suspect, he nevertheless instructed his investigator to pursue no leads implicating Mr. X. In addition,

he noted other instances where Mr. X's name had surfaced during the investigation, in spite of the directives from trial counsel to focus the investigation on other areas and, again, the thrust of the investigation, pursuant to counsel's initial directives, remain unchanged. The trial judge held that a lawyer of ordinary training and skill, having in his possession the host of leads and information arising before trial pointing toward Mr. X, would certainly have seen to it that the information and leads were fully investigated.

Second, the judge pointed out that trial counsel avoided focusing suspicion on Mr. X during the trial. In support of this conclusion, the judge noted that substantial evidence which could have been introduced at trial about the alternative mastermind of the conspiracy showing that person to be a real person, namely Mr. X, was ignored.

Third, the judge noted in his opinion that trial counsel was less than candid with his law firm associate, who spent a good deal of time preparing the case for trial, insofar as he failed to inform the associate of his prior relationship with Mr. X and how Mr. X might have fit into the case, based on information supplied during the investigation. In this regard, the judge noted that it appeared that counsel purged his office file of any information tending to implicate Mr. X before providing the same to his associate.

Having concluded that defendant had not received effective assistance of counsel, the judge proceeded to a discussion of whether the error could be considered harmless. He concluded it could not and granted the motion for a new trial.

The remainder of the opinion addressed the multiple remaining claims which had been originally raised in the various motions for a new trial.

Addressing the items one by one, he found that each asserted error was insufficient to result in a new trial. In many instances, however, he theorized that the administration of justice would have been better served had the particular factual situation not occurred. Using this analysis, he concluded that there had been a miscarriage of justice and that defendant was entitled to a new trial. MCL 770.1; MSA 28.1098.

The first issue on appeal is whether the trial court abused its discretion in granting a new trial based on ineffective assistance of counsel.

As a general rule, the grant or denial of a motion for a new trial rests within the sound discretion of the trial court. Absent an abuse of that discretion, this Court will not interfere with the decision on appeal. *Willett v Ford Motor Co,* 400 Mich 65, 70-71; 253 NW2d 111 (1977). In *Benmark v Steffen,* 9 Mich App 416; 157 NW2d 468 (1968), this Court adopted the following criteria for determining whether, in the case of the grant of a new trial, there has been a proper exercise of discretion:

"It is suggested that the most logical way to test the trial court's decision is to inquire, first, whether the reasons assigned by the court for granting a new trial are legally recognized ones. * * * The second part of the test is whether the reasons assigned by the trial court are supported by any reasonable interpretation of the record." *Benmark, supra,* 422. (Citations omitted.)

The *Benmark* criteria were approved by the Supreme Court in *Kailimai v Firestone Tire & Rubber Co,* 398 Mich 230, 232; 247 NW2d 295 (1976), and again, more recently, in *Willett, supra.*

There can be no doubt that the first prong of the *Benmark* test is satisfied in the instant case. The

ground stated, ineffective assistance of counsel, is a legally recognizable basis for the grant of a new trial. See *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). The remaining question, then, is whether the finding of ineffective assistance of counsel, based upon a factual finding of a conflict of interest, is supported by any reasonable interpretation of the record.

In *People v Garcia, supra,* the Michigan Supreme Court rejected the former "sham" test for finding ineffective assistance of counsel in favor of a test enunciated in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). The *Beasley* test provides as follows:

"Defense counsel must perform at least as well as a lawyer of ordinary training and skill in the criminal law and must conscientiously protect his client's interests, *undeflected by conflicting considerations."* (Emphasis added.)

Ineffective assistance of counsel can be proven by a second avenue as well. Where defense counsel's actions at trial produce a "serious error but for which defendant would have had a reasonable likelihood of acquittal", ineffective assistance will also be found to have been established. *People v Garcia, supra, People v Knight,* 94 Mich App 526, 528; 288 NW2d 649 (1980).

In the instant case, the claim appears to be that defense counsel's professional judgment was deflected due to preexisting loyalty to a former client and that, as a result, counsel failed to investigate a potentially substantial defense available to defendant. *Beasley v United States, supra,* 696.

This case presents an unusual factual situation since the asserted conflict of interest does not arise out of the joint representation of multiple defen-

dants in a criminal trial, as is typically the claim, but rather involves a claim that a conflict of interest exists due to the representation of a former client who is somehow purportedly involved in the present litigation. Although the two situations described above are factually distinguishable, the legal question presented in each, *i.e.,* whether the resulting conflict of interest served to deprive the defendant of the effective assistance of counsel, is essentially the same. In either situation, the concern is that a defendant is entitled to the undivided loyalty of his counsel, *People v Gardner,* 385 Mich 392, 400; 189 NW2d 229 (1971), and that that loyalty may be compromised when a lawyer, wittingly or unwittingly, is placed in the precarious position of having to serve two masters, each of whom has differing interests.

We are of the opinion that a recent Michigan Supreme Court decision dealing with the conflict of interest issue is applicable in the instant case. The question in *People v Bentley,* 402 Mich 121; 261 NW2d 716 (1978), was whether the defendant was denied his right to counsel because his trial attorney simultaneously represented a codefendant with conflicting interests. Both defendants made pretrial motions for separate trials on the grounds that a witness had confused the two defendants in earlier identifications and that the defenses of the two generally were so divergent that separate trials were mandated. The trial judge denied the motions and a panel of this Court affirmed.

On appeal, the Supreme Court reversed, holding that Bentley was denied his right to effective assistance of counsel since the joint representation at trial of defendant and codefendant by the same attorney *"may"* have inhibited the defense attorney's cross-examination of an eyewitness, an argu-

ment that the codefendant's link to incriminating
evidence was stronger than defendant's link to the
evidence *"might"* have been but was not made,
and an argument potentially prejudicial to the
codefendant stressing the greater reliability of
lineup identification *"might"* have helped the de-
fendant. *People v Bentley, supra,* 123.

In *People v Browning,* 407 Mich 920 (1979),
Justice LEVIN, dissenting from a decision of the
Court denying leave to appeal, summarized the
Court's holding in *Bentley* as follows:

"For all the *[Bentley]* Court knew, the defense attor-
ney may have had perfectly sound independent reasons
for forgoing the possible alternative strategies. None-
theless, this Court said that since the judge did not
attempt to determine if the defendant was aware of the
potential conflicts and prejudice arising from joint rep-
resentation, thereby precluding an inference of a volun-
tary and informed waiver, no actual prejudice or effect
on defense counsel's trial strategy need be shown to
support a finding of denial of the right to effective
assistance of counsel." *People v Browning, supra,* 923.

As in *Bentley, supra,* the record does support a
finding that defense counsel's former representa-
tion of an alternate suspect in this case "may"
have inhibited counsel's directives concerning the
investigatory process, which, in turn, "may" have
affected counsel's examination and cross-examina-
tion of witnesses and the manner in which the
trial was conducted.

The most troublesome aspect of this case is that
it is unclear whether defendant was ever informed
of the potential conflict of interest and risks pursu-
ant thereto and whether the defendant had con-
sented to counsel's representation when and if
such disclosure was made. Although this issue was
disputed in posttrial proceedings, what is clear is

that the trial court was not aware of or did not recognize the conflict of interest until after the trial was concluded and thus did not explain to defendant the risks of counsel's representation at trial.

On this record, we are convinced that the trial court was correct in finding that a conflict of interest "may" have prejudiced the defendant's trial and that no valid waiver had occurred. Although counsel himself may have been completely convinced in his own mind that he could adequately represent defendant without regard to his former client, *Bentley* requires that the ultimate decision be made, *not* by counsel, but by the defendant himself on the record after being advised by the trial court of all the possible dangers of such representation. As the United States Supreme Court held in *Glasser v United States,* 315 US 60, 71; 62 S Ct 457; 86 L Ed 2d 680 (1942):

"Upon the *trial judge* rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. * * * 'While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record.' *Johnson v Zerbst,* 304 US 458, 465; 58 S Ct 1019, 1023; 82 L Ed 1461 [1937]." (Emphasis added.)

We conclude, therefore, that the trial judge did not abuse his discretion in granting defendant a new trial based on ineffective assistance of counsel. The trial judge in this lengthy involvement was on the firing line, observed the witnesses, and was in a better position to weigh the proofs and consider credibility.

The second issue on appeal is whether the trial

judge abused his discretion in granting a new trial based on a finding of a miscarriage of justice, MCL 770.1; MSA 28.1098. Although our resolution of the first issue makes it unnecessary for us to reach the merits of this issue, we feel compelled to do so since we are firmly convinced that the judge abused his discretion in granting a new trial based on this ground.

MCL 770.1; MSA 28.1098, states:

"The court in which the trial of any indictment shall be had may grant a new trial to the defendant, for any cause which by law a new trial may be granted, or when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct."

The decision whether to grant or deny a motion for new trial is entrusted to the discretion of the trial court and that decision will not be disturbed on appeal without a showing of an abuse of discretion. *People v Andrews,* 360 Mich 572; 104 NW2d 199 (1960).

The discretion afforded trial judges pursuant to the above-cited statute is not, however, without limits and must amount to more than a whimsical *ipse dixit.* As this Court held in *People v Williams,* 93 Mich App 236, 244; 287 NW2d 184 (1979):

"Not every irregularity in a trial justifies the granting of a mistrial or new trial but only where it is clearly established that the error resulted in prejudice sufficient to deprive the defendant of a fair and impartial trial. *People v Nick,* 360 Mich 219; 103 NW2d 435 (1960), *People v Watson,* 307 Mich 596; 12 NW2d 476 (1943), *cert den* 323 US 749; 65 S Ct 81; 89 L Ed 600 (1944)."

In his written opinion, the trial judge considered

ten allegations of error which, according to the defendant, required either dismissal or reversal.

The first claimed error concerned the court's taking of evidence outside the presence of the defendant. The evidence in question related only to the people's case against codefendant Hence and in no way affected Gallagher. In his opinion, the trial judge concluded that there was "simply no possible way in which Gallagher could have been prejudiced by the taking of this testimony in his absence". Although finding no error, the judge concluded it would have been "better" to have taken the evidence in Gallagher's presence.

The second claimed error centered around the judge's absence from the courtroom on the final days of jury deliberations. In his opinion, the judge first determined that any objection to his absence had been waived by the parties but further concluded that "there was no reversible error since Gallagher was not prejudiced by my absence". After citing ample authority in support of his conclusion that his absence had not caused any prejudice, he nevertheless concluded that the administration of justice would have been better served had he been present.

The third ground urged by the defendant for a new trial was based on a claim of newly discovered evidence. The record reveals, as the judge's opinion notes, that the claimed "newly discovered evidence" was not in fact newly discovered. In addition to not being newly discovered, however, the judge noted that the evidence would be inadmissible hearsay and, even if not inadmissible, would be "unlikely to bring about a different result on new trial".

The fourth ground urged by defendant for a new trial centered around the judge's decision to per-

mit Norman Robinson to testify. At trial, the claim had been made that his testimony was induced by an unlawful agreement between himself and the prosecutor. In both his July 15 oral opinion and in his written opinion of October 30, the judge concluded that a new trial was not warranted on this ground since no error had occurred.

The next two claims of error revolved around the assertion that the prosecution witnesses were inherently incredible. In his written opinion, the judge concluded that the claimed error was meritless.

The seventh argument addressed in the written opinion concerned whether the judge abused his discretion in placing a 1-1/2 hour time limitation on closing arguments. After stating several times that he acted well within his discretion in limiting closing argument, and specifically noting that "[Gallagher] has not demonstrated any prejudice that resulted from either the short period of notice or the 1-1/2 hour limit itself", he nevertheless concluded that "justice would have been better served" if he had given defense counsel greater advance notice of the time limit.

The eighth allegation of error was that prosecutorial misconduct required a new trial. In his oral opinion of July 15, the judge concluded that he was convinced "beyond a reasonable doubt" that defendant suffered no prejudice and that no error occurred requiring dismissal. The judge reaffirmed this position in his written opinion.

The ninth alleged error asserted that defendant was prejudiced in having a substitute judge deny his motion for a mistrial during jury deliberations. In his opinion, the judge concluded that "Gallagher can hardly claim now that it was reversible error for a judge other than myself to handle the

jury", yet concluded that "it would have been better had I been present" to hear the mistrial motion.

The final "claim of error" was a ground which the judge appears to have raised *sua sponte.* It concerned testimony of Phillip Edmonds to the effect that killing Sommers would be like "icing on the cake". While we agree that this was *relevant* in considering whether there had been a miscarriage of justice, we cannot agree that these few statements are of such magnitude to reflect a miscarriage of justice by themselves.

We have detailed the findings and conclusions of the trial judge in order to show that his ultimate finding of a miscarriage of justice was clearly an abuse of discretion. Not only did the judge conclude that none of the allegations complained of resulted in error, but he further concluded that defendant was not prejudiced by any of the procedures employed at trial. In short, as in *People v Williams, supra,* 244, the defendant here has made absolutely no showing of actual prejudice. In fact, there has been absolutely no showing of trial error. We conclude, therefore, that the trial judge abused his discretion in granting a new trial based upon a miscarriage of justice.

We affirm that part of the trial court's decision granting defendant a new trial based on a finding of ineffective assistance of counsel but reverse that part of his decision finding that justice had been miscarried.

CYNAR, J., concurred.

H. R. GAGE, J. *(concurring in part and dissenting in part).* I respectfully dissent. Although the majority accepts the trial court's determination that a conflict of interest existed and focuses its attention

on whether the conflict affected counsel's performance, I find no basis for concluding that a conflict was established.

In order to establish ineffective assistance of counsel, defendant must demonstrate an *actual* conflict of interest which adversely affects his lawyer's performance. He must show that his counsel actively represented conflicting interests. *Cuyler v Sullivan*, 446 US 335; 100 S Ct 1708; 64 L Ed 2d 333 (1980). The trial court was of the opinion that a conflict existed because counsel had represented Mr. X on a prior occasion and because of an alleged personal relationship between the two. I find neither to be supported by the evidence.[1]

There can be no question that, at all times relevant to the case at bar, counsel was not retained by Mr. X in any professional capacity, particularly in any matter connected to this action. Although counsel had previously represented Mr. X in an unrelated matter, that relationship had terminated well before counsel was retained to represent defendant in the instant case. Further, defendant presented no evidence indicating that counsel acquired any information during the course of his representation of Mr. X which might have been favorable to defendant but which counsel was precluded from using at trial because of any ethical obligation to Mr. X. Finally, defendant failed to present any evidence from which it could be inferred that counsel has received or, at the time of trial, anticipated receiving any further business from Mr. X. Any conclusion that counsel actively represented conflicting interests because of this prior attorney-client relationship is based upon speculation and conjecture only, not upon

---

[1] Although the trial court's opinion is rather long, consisting of 80 pages, its treatment of this initial question is very short, consisting of approximately 7 pages only.

the evidence. Counsel was not serving two masters. See *Olshen v McMann*, 378 F2d 993 (CA 2, 1967), *United States ex rel Kachinski v Cavell*, 453 F2d 581 (CA 3, 1971) (counsel formerly represented a prosecution witness).

The absence of the attorney-client relationship distinguishes the case at bar from *People v Bentley*, 402 Mich 121; 261 NW2d 716 (1978), relied upon by the majority. The dangers inherent in joint representation cases are simply not present here. Counsel did not have two clients to whom he owed his undivided loyalty. He was not confronted with a situation where his efforts to protect the interests of one client would cause him to sacrifice the interests of the other client which he was also ethically obligated to protect. No actual conflict of interest existed because of counsel's former representation of Mr. X.

The trial court was also of the opinion that because of a continuing personal relationship between counsel and Mr. X, counsel sought to protect Mr. X at defendant's expense.[2] I do not believe that the evidence justifies such a determination.

The evidence indicated that counsel knew of Mr. X during high school because each lived in the same community. They did not attend the same high school. There was no evidence that they developed any type of personal relationship at that time which carried over to the time of defendant's trial. The trial court stated in its opinion that both counsel and Mr. X were in their early forties at

---

[2] It should be noted that no evidence was presented indicating that Mr. X was seriously considered or investigated as a suspect by the police. The assertion that he was involved in the conspiracy came primarily from defendant and Phillip Edmonds, a coconspirator who was granted immunity from prosecution in return for his testimony. Counsel's investigator testified that Edmonds had given conflicting statements to the police and that it was his opinion that Edmonds was a liar.

the time of trial. Clearly, a good deal of time had passed since each was in high school. This factor does not demonstrate the existence of an actual conflict of interest.

There was also evidence that counsel and Mr. X had dinner on one occasion during the time that counsel represented him on the federal narcotics charge and that because of similar interests they happened, upon a couple of occasions, to be at the same social gatherings. The evidence showed that on these occasions numerous other people were also present. None of these social events took place during the course of counsel's representation of defendant. Defendant failed to meet his burden of establishing an actual conflict of interest simply by showing these limited social contacts. Were such the case, members of the bench and bar would constantly have to be aware of who is present at the social gatherings they attend because their presence may someday result in a finding of ineffective assistance of counsel.

In addition to the above evidence the trial court also placed a great deal of emphasis on the testimony of counsel's investigator to find that a conflict of interest existed. A review of the testimony in its entirety does not justify a conclusion that counsel prevented his investigator from pursuing Mr. X should the evidence warrant it. The investigator testified that, had he obtained any evidence of Mr. X's involvement which he believed to be credible, he would have pursued it. He testified that he found no such evidence, despite the fact that he interviewed 40 or more witnesses and put approximately 400 hours of actual investigative work into the project. The trial court noted in its opinion that the investigator had a great deal of training and experience in his field, including 20

years as an agent with the Federal Bureau of
Investigation. He was clearly in a better position
than the court to determine whether a particular
matter should be pursued. Counsel's actions re-
sulted from the information obtained during the
investigation and not from any personal relation-
ship with Mr. X.

I also wish to express my concern with what I
perceive to be a rule of law advanced by the
majority. I interpret the majority opinion as find-
ing ineffective assistance of counsel upon its belief
that the defense could have been more effective
but for the possible conflict of interest. Counsel's
representation was masterful and effective. I dare
say that a case shall never exist where an unsuc-
cessful defendant or a reviewing court cannot
justifiably argue that a more effective defense may
have been presented had some other course been
followed. The role of the courts, however, is not to
second-guess trial counsel, determine what in hind-
sight it believes to be a more proper course and
then find that counsel was ineffective for his or
her failure to follow that course. If as a matter of
trial strategy counsel chooses an avenue of defense
which he or she believes will be successful and
effectively pursues that defense, neither the trial
court nor this court should deem such representa-
tion to be ineffective because of a belief that a
different avenue may have been even more effec-
tive. *People v Crosby,* 19 Mich App 135; 172 NW2d
506 (1969), *People v Mays,* 64 Mich App 453; 236
NW2d 513 (1975), *People v Penn,* 70 Mich App
638; 247 NW2d 575 (1976). In the case at bar
counsel sought to advance the theory that any
discussions between defendant and the other al-
leged conspirators concerned the theft of an auto-
mobile, not the murder of Sommers. Counsel also

sought to attack the credibility of those witnesses who testified against defendant. Given the background of these individuals such an approach was one that a skilled attorney could reasonably and logically follow.

As with virtually any case, several avenues of defense were available. Counsel chose those avenues which he believed would most likely be successful based upon the information obtained through his investigation. Just as a reviewing court is very reluctant to second-guess a trial court on a matter involving the exercise of its discretion, so too should the courts be equally reluctant to second-guess trial counsel on a matter involving legitimate trial strategy. Counsel's representation of defendant was effective.

I concur with the majority's determination that no miscarriage of justice was demonstrated. Defendant's conviction should be affirmed.