Douglas S. LEWIS, Petitioner–Appellant,

v.

George ALEXANDER, Respondent–Appellee.

No. 92–3689.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1993.

Decided Dec. 17, 1993.

J. Dean Carro (argued and briefed), University of Akron School of Law, Appellate Review Office, Akron, OH, for petitioner-appellant.

John J. Gideon (argued and briefed), Robert L. Solomon, Office of the Atty. Gen. of Ohio, Columbus, OH, for respondent-appellee.

Before: RYAN and SUHRHEINRICH, Circuit Judges; and JOINER, Senior District Judge.*

CHARLES W. JOINER, Senior District Judge.

Douglas Lewis appeals the denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. Lewis contends that the district court erred in concluding that he was not denied effective assistance of counsel in his 1982 murder trial. We affirm the judgment of the district court.

## I.

### A.

On the night of July 3, 1982, Lewis hosted a party at which guests shot off fireworks and threw apples at passing cars. Decedent Dana Bohse was a passenger in one of the cars hit by apples. The car stopped, and Bohse bolted out in Lewis' direction. Lewis had been hiding in the bushes, but stepped out and ordered Bohse off the property, warning Bohse that he had a gun. Lewis testified at his criminal trial that Bohse threatened him, and that he became scared and was trying to back away when he slipped and his shotgun went off. Bohse was hit at close range in the groin. He was immediately hospitalized and had surgery, but died eight days later.

Lewis was defended at trial by retained counsel, Walter Porter. Porter advanced the defense of accident, but Lewis was found guilty of murder and was sentenced to a prison term of 15 years to life. He is currently on parole.

### B.

Lewis' habeas corpus petition [1] is based on Porter's decision not to rely on the defense that Bohse's death was caused by intervening gross medical maltreatment. Lewis contends that Porter's rejection of this defense without reasonable investigation deprived him of effective assistance of counsel. He requests this court to reverse the district court's conclusion to the contrary, and remand the case for a determination as to whether he was prejudiced by counsel's failure to advance the defense. The district court conducted an evidentiary hearing on Lewis' petition, and we briefly set forth the evidence submitted.

Porter had substantial prior experience in trying criminal cases, first in the prosecutor's office and then in private practice. Porter was familiar with the defense of lack of causation in murder cases, and had been involved in a case in which the defense was asserted but rejected by the Ohio Court of Appeals. In 1978, the Ohio Supreme Court decided *State v. Johnson,* 56 Ohio St.2d 35, 381 N.E.2d 637, 640 (1978), stating in pertinent part:

> It is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life. This rule has been qualified where there has been a gross or willful maltreatment of the patient by the medical personnel, which is shown to have been an indepen-

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Prior to filing his habeas petition, Lewis first appealed in state court, raising ineffective assis-

tance of counsel. Respondent makes no argument that petitioner has failed to exhaust state remedies.

dent intervening cause of the patient's death.

(Citations omitted.) While Porter did not review *Johnson* during his representation of Lewis, he was familiar with the case and the standard for a gross medical maltreatment defense.

Porter obtained and reviewed a copy of the autopsy protocol, but it is not clear whether he personally obtained Bohse's medical records from the hospital. However, the medical records were provided to the coroner's office, and were reviewed by Dr. Donald Schaffer, the deputy coroner who performed Bohse's autopsy. Porter met with Schaffer during his preparation for trial. One of Porter's principal concerns was the autopsy's report that Bohse was 6'4″ tall and weighed 290 pounds, because Porter had been advised that Bohse was 6'2″ tall and weighed only 200 pounds. Schaffer explained that the height measurement on the autopsy report was an estimate, but that the weight discrepancy was accurate and reflected that Bohse had been transfused 192 times during the eight days following surgery. Porter asked Schaffer whether there was anything in Bohse's treatment that could have been the cause of death. Schaffer told Porter that his findings at the autopsy and his review of the medical records "did not lead me to believe that his death at all was secondary to treatment but was, in actuality, as a result of the wound he had received." Schaffer told Porter that Bohse survived for eight days because he was a teenager in good health when he was shot, and because of the treating hospital's heroic efforts. Porter did not obtain a second opinion regarding the cause of death because he had known Schaffer professionally for a number of years, was aware of his excellent reputation, and had a high regard for his professional judgment.

Porter also reviewed the color slides taken during the autopsy of Bohse's swollen body and internal injuries. The slides were graphic and potentially inflammatory. Based upon Schaffer's opinion as to the cause of Bohse's death, and to reduce the risk that the autopsy slides would be admitted at trial to the prejudice of his client, Porter elected to not advance the defense that Bohse's death was due to intervening gross medical maltreatment. Porter did not discuss this decision with Lewis.

Extensive testimony was submitted at the evidentiary hearing regarding the medical and surgical care Bohse received. The autopsy's gross anatomic summary reflected sutured lacerations of the left femoral artery and ligated and transected left femoral vein. The summary also noted lacerations of the iliac vein, but that reference was not accompanied by a statement that the lacerations were sutured. Schaffer testified that he would have noted the existence of sutures if they were present, but also stated that the absence of sutures at the time of the autopsy was not conclusive as to whether the vein had been sutured during surgery.

Petitioner's medical expert testified that Bohse's medical records reflected that Bohse had oozed or bled so extensively into his abdominal and peritoneal cavities that reexploration was required. According to petitioner's expert, Bohse's surgeons never controlled his vascular injuries, which led to other problems, including respiratory distress syndrome and renal failure. This expert characterized Bohse's care as gross negligence, and testified that Bohse most likely would have survived if his major vein had been tied, although he might have lost his left leg.

The state's medical expert testified that for the surgeons to have dissected the injured vein would have required opening more wound. The state's expert explained that the absence of small sutures on the vein did not rule out the possibility that the surgeons repaired the vein with large sutures. In this expert's opinion, the surgeons were not grossly negligent, but were in a very tough spot and were fortunate that Bohse survived the surgery.

Lewis' legal expert witness testified that any competent defense attorney would have been alerted to the need for a second opinion on the cause of Bohse's death due to: the fact that the injury occurred in the early morning hours of July 4, when residents rather than seasoned medical professionals were likely to be on duty; the height and weight differentials in the autopsy report;

and the unusual circumstance that Bohse lingered for eight days before dying. In addition, the existence of a personal or professional relationship between Schaffer and the treating physicians or hospital would have alerted defense counsel that something could be amiss with Schaffer's assessment of the case.[2]

### C.

The court found that Porter determined that he could not raise a viable intervening medical maltreatment defense and made a strategic decision not to pursue investigation of that defense, although he did not inform Lewis of that decision. The court concluded as a matter of law that Lewis was not deprived of effective assistance of counsel because Porter made a strategic decision to not rely on the defense, and based that decision upon a correct understanding of the law, both with respect to the elements of a causation defense and the risk of admissibility of the evidence.

The court further noted that Lewis would have to demonstrate prejudice as a result of Porter's failure to rely on the intervening medical maltreatment defense. The court found that Bohse's surgeons should have recognized that they had not controlled Bohse's vascular injuries, and further noted that Bohse's medical records made no reference to the internal iliac vein, indicating that the surgeons either did not explore that area or did not discover the lacerations. While the court found that the treating physicians were negligent, it found the issue of gross negligence more difficult. However, the court stated that it was unnecessary to decide this issue due to Lewis' failure to demonstrate that Porter's performance was not competent.

### II.

■ In *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984), the Court set forth the now familiar two-prong test applicable to claims of ineffective assistance of counsel. A

petitioner such as Lewis bears the heavy burden of demonstrating that counsel made an error so serious that he was not functioning as counsel guaranteed by the Sixth Amendment and that this deficient performance prejudiced his defense. In other words, the issue is "whether counsel's performance was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (*en banc*), *cert. denied*, —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993) (emphasis in original). The district court's conclusion regarding counsel's performance is a mixed question of law and fact which is reviewed de novo by this court. *Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir.1992).

A reviewing court must assess counsel's conduct as of the time it was taken, and determine whether the challenged acts or omissions were outside the "wide range of professionally competent assistance.... [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Counsel's performance of his duty to investigate is similarly scrutinized:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690–91, 104 S.Ct. at 2066.

■ This court has recognized that counsel's failure to investigate key evidence or to

---

2. A fact not known to Porter at the time was that Schaffer instructed residents at the treating hospital in forensic pathology. However, Schaffer

was not paid for this service, and was not personally acquainted with Bohse's surgeons.

make a reasonable decision that a particular investigation is not necessary constitutes ineffective assistance, and thus precludes an argument that counsel's course of action was based on a legitimate strategic choice. *E.g., Sims,* 970 F.2d at 1580–81 (counsel's failure to investigate information in F.B.I. report that tests of a quilt from the decedent's bed revealed gunpowder residue, explaining the lack of gunpowder on the decedent and supporting the defendant's version of the events).[3] In such circumstances, it is not possible to discern a strategy in counsel's omissions, only negligence. *Id.*

This case, however, does not involve a failure to investigate but, rather, petitioner's dissatisfaction with the degree of his attorney's investigation into a possible defense. The case thus resembles *Strickland,* where a habeas petitioner claimed that his attorney rendered ineffective assistance at sentencing by reason of his failure to, *inter alia,* request a psychiatric report or to investigate and present character witnesses. The state had conducted a psychiatric examination shortly after arraignment indicating that the petitioner had no major mental illness at the time of trial. Applying its newly articulated standards, the Supreme Court concluded that counsel's strategic decision not to pursue additional character or psychological evidence was reasonable:

> Restricting testimony on respondent's character to what had come in at the plea colloquy ensured that contrary character and psychological evidence and respondent's criminal history, which counsel had successfully moved to exclude, would not come in. On these facts, there can be little question, even without application of the presumption of adequate performance, that trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment.

*Strickland,* 466 U.S. at 699, 104 S.Ct. at 2071.

■ Lewis contends that Porter's failure to review Bohse's medical records, and his failure to obtain a second opinion on the cause of Bohse's death, render his investigation into the viability of the intervening maltreatment defense and his strategic decision not to employ that defense, constitutionally infirm. We disagree. An attorney is entitled to rely on a professional of established skill and reputation in formulating judgments necessary to trial preparation. That is what Porter did here. While Porter did not personally review Bohse's medical records, Schaffer reviewed those records, and expressed a professional opinion on the cause of death based upon his findings at the autopsy *and* his review of the records. There were no facts known to Porter or reasonably discoverable by him at the time of trial indicating incompetence or bias on Schaffer's part, and none was disclosed at the evidentiary hearing. Under these circumstances, Porter was not required to challenge Schaffer's opinion, and we will not adopt a constitutional rule that counsel is ineffective if he relies on the professional opinion of a coroner in formulating defense strategy, rather than hiring an independent expert. As in *Strickland,* Porter's decision not to pursue additional medical evidence was reasonable, and his strategic choice not to employ the intervening medical maltreatment defense was within the wide range of professionally competent assistance, particularly in light of his legitimate concerns about the evidentiary risks posed by the defense.

■ We also reject the suggestion that Porter's performance was constitutionally deficient because he decided against the maltreatment defense without first informing Lewis. While an attorney has the duty to consult with his client on important decisions, this duty, and the others owed by counsel, do not provide a checklist for judicial evaluation of attorney performance. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. Prevailing norms of practice, such as those reflected in the American Bar Association *Standards for Criminal Justice,* provide guides to determining the reasonableness of counsel's actions. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70. We conclude that counsel may

---

**3.** *Accord Workman v. Tate,* 957 F.2d 1339, 1345 (6th Cir.1992) (counsel's failure to locate and interview sole witnesses to defendant's altercation with police); *Blackburn v. Foltz,* 828 F.2d 1177, 1183 (6th Cir.1987), *cert. denied,* 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988) (counsel's failure to interview an alibi witness whose name was provided by the defendant and who had called and left messages at counsel's office).

exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment. *See* A.B.A. 1 *Standards for Criminal Justice* Standard 4–5.2,[4] recognizing that decisions such as those at issue here are within the exclusive province of defense counsel to make after consultation with his client. *Cf. Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (appellate counsel has no constitutional duty to raise every nonfrivolous issue suggested by his client on appeal; a contrary rule would undermine counsel's ability to present the case in accordance with his professional evaluation).

A claim of ineffective assistance of counsel is an attack on the fundamental fairness of the proceedings whose result is challenged. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. We discern no fundamental unfairness here.

**AFFIRMED.**

---

**4.** Standard 4–5.2 states, in pertinent part:

(a) Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are:

(i) what plea to enter;

(ii) whether to waive jury trial; and

(iii) whether to testify in his or her own behalf.

(b) The decisions on what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client.