**Henry Lee HENCE, Jr., Petitioner,**

v.

**David SMITH, Respondent.**

**No. Civ. 97–CV–40461–FL.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 10, 1999.

973

OPINION AND ORDER DENYING
PETITION FOR WRIT OF
HABEAS CORPUS

GADOLA, District Judge.

Petitioner, Henry Lee Hence, Jr. ("petitioner"), presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of a habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed pro se, petitioner challenges his conviction and sentence on one count of first degree murder, M.C.L. 750.316; M.S.A. 28.548 and one count of conspiracy to commit first degree murder M.C.L. 750.157a; M.C.L. 750.316; M.S.A. 28.354(1); M.S.A 28.548. For the reasons stated below, petitioner's application for writ of habeas corpus is denied.

### I. Background

Petitioner was charged along with co-defendant Raymond Gallagher with first degree murder and conspiracy to commit first degree murder for the death of Leon Sommers. He was convicted of these offenses after a joint trial with Gallagher in the Wayne County Circuit Court. Another co-conspirator, Norman Wayne Robinson, was tried and convicted separately of second degree murder. A fourth accomplice, Phillip Edmonds, was given immunity from prosecution in exchange for his testimony.

On May 11, 1978, Leon Sommers was found by his wife shot to death in their Taylor, Michigan home. It was later determined that Sommers had been shot with his own weapon. Subsequent investigation revealed that Sommers had previously testified in a federal district court in Ohio against co-defendant Gallagher, after which Gallagher was convicted of interstate transportation of a stolen motor vehicle. Phillip Edmonds testified that Gallagher hired him to have Sommers killed in retaliation for his testimony against Gallagher. Edmonds testified that he hired Norman Robinson and petitioner to kill Sommers.[1] Edmonds met with Robinson

Henry Lee Hence, Jr., Adrian, MI, pro se.

Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division Lansing, MI, for Respondent.

1. *People v. Hence,* 110 Mich.App. 154, 158– 159, 312 N.W.2d 191 (1981).

and petitioner in April of 1978 to plan the murder. According to Edmonds, petitioner came to the meeting carrying a briefcase which contained a .38 caliber blue steel revolver.[2] Edmonds testified in exchange for immunity from prosecution for the murder of Sommers. There was also an agreement by the Oakland County Prosecutor to drop habitual offender charges against Edmonds in exchange for his testimony in this case.[3]

Robinson testified that he and petitioner actually carried out the murder, with Hence shooting the victim.[4] Norman Wayne Robinson had been convicted of second degree murder in a separate trial for his involvement in this crime and had received a life sentence. Robinson agreed to testify against petitioner in exchange for a promise from the prosecutor that they would ask the sentencing judge to reduce Robinson's sentence to fifteen (15) to thirty (30) years.[5] Robinson testified that he and petitioner went to the victim's house and bound his wrists with tape. Robinson stated that petitioner shot the victim while he was in the victim's garage obtaining some marijuana.[6]

Petitioner was subsequently arrested during a traffic stop by a Georgia state trooper outside of Atlanta, Georgia on August 10, 1978. After being detained, petitioner attempted to flee from the police by escaping from the patrol car, but was apprehended shortly thereafter. During a search of the vehicle that petitioner was driving, police discovered a briefcase which contained four weapons inside of it, including a .38 caliber revolver. Police also recovered a digital watch from petitioner.[7] Robinson and Edmonds testified that the revolver recovered from petitioner at the time of his arrest looked similar to the .38 revolver that petitioner brought with him to a meeting with Robinson and Edmonds in April of 1978 and to the shooting on May 11, 1978.[8] The victim's wife had testified that a digital watch belonging to the victim had been taken from the house during the killing.[9] The prosecution contended that the digital watch taken from petitioner at the time of his arrest was actually the victim's watch.[10]

Petitioner raised an alibi defense at trial that he was at home with his wife and a friend the day of the shooting. Petitioner denied being at work on the day in question and stated he had been with his friend all day.[11] After his testimony, the prosecutor called the records keeper from Chrysler Corporation, who testified that a time card belonging to petitioner showed that it had been punched in at 3:25 p.m. and punched out at 12:04 a.m. on May 11, 1978.[12] Robinson was also called as a alibi rebuttal witness by the prosecution as well, in which he testified that after the killing, he and petitioner had used cocaine with two females.[13]

Petitioner also contended that he had purchased the digital watch and produced a sales tag to substantiate his claim. After testifying, but before closing arguments,

2. *People v. Hence, supra* at 161, 312 N.W.2d 191.

3. Petitioner's Brief, pp. 6–7.

4. *People v. Hence, supra* at 161, 166, 312 N.W.2d 191.

5. Petitioner's Brief, pp. 184–185.

6. Petitioner's Brief, pp. xxiv–xxv

7. *People v. Hence, supra* at 159–160, 312 N.W.2d 191.

8. *People v. Hence, supra* at 161–162, 312 N.W.2d 191.

9. *People v. Hence, supra* at 159, 312 N.W.2d 191.

10. *People v. Hence, supra* at 164, 312 N.W.2d 191.

11. *People v. Hence, supra* at 159, 172–173, 312 N.W.2d 191

12. *People v. Hence, supra* at 173, 312 N.W.2d 191.

13. Petitioner's Brief, p. 25, fn. 3

the sales tag was allegedly lost. The parties agreed to make a reproduction of the exhibit, although petitioner objected to the procedure. Following the trial, an evidentiary hearing was conducted in which co-defendant Gallagher testified that petitioner's attorney had brought the sales tag into the lockup to discuss it with petitioner during a break in the trial. As the lawyer left, the tag inadvertently fell to the floor and petitioner placed his foot over it. Petitioner told Gallagher that the sales tag was "bogue" and flushed it down the toilet in the cell. The trial court found that petitioner had deliberately destroyed the sales tag.[14]

Petitioner and Gallagher were both convicted of first degree murder and conspiracy to commit murder. Petitioner's conviction was affirmed by the Michigan Court of Appeals in a published opinion on October 6, 1981.[15] Petitioner never filed an application for leave to appeal with the Michigan Supreme Court.

During the pendency of petitioner's appeal, the Wayne County Circuit Court conducted an evidentiary hearing on co-defendant Gallagher's claim of ineffective assistance of counsel. After taking testimony, Judge Victor Baum found that there was evidence that another person, referred to only as "B.S." may have had a motive to have Sommers killed to prevent him from cooperating with law enforcement authorities in a narcotics investigation against "B.S." The trial court further found that Gallagher's attorney had been a long-time friend and attorney of "B.S." The trial court concluded that because of the attorney's long-standing personal and professional relationship with "B.S.", he did not pursue a theory that "B.S.", and not Gallagher, had ordered the killing of Sommers. The trial court concluded that this conflict of interest deprived Gallagher of the effective assistance of counsel.[16] The Michigan Court of Appeals affirmed the grant of a new trial for Gallagher, also on the ground that his trial attorney's conflict of interest deprived Gallagher of the effective assistance of counsel.[17]

Petitioner subsequently filed a delayed motion for a new trial, contending that this evidence that another person besides Gallagher may have ordered Edmonds to have Sommers killed was exculpatory evidence, which the prosecution withheld from him in violation of his due process rights. The trial court denied petitioner's motion for a new trial.[18] The Michigan Court of Appeals denied petitioner's application for leave to appeal. On August 28, 1985, the Michigan Supreme Court denied petitioner leave to appeal.[19]

In 1987, some eight years after petitioner's conviction, Norman Wayne Robinson supplied petitioner with an affidavit, in which he purportedly recanted his testimony against petitioner and indicated that he had committed perjury when he had testified that petitioner had shot and killed Sommers.[20] Petitioner filed a motion for a new trial based in part on Robinson's affidavit. After the trial court initially denied the motion without a hearing, the Michigan Court of Appeals remanded the matter back to the Wayne County Circuit Court for an evidentiary hearing.[21] After hearing testimony, the Wayne County Circuit Court denied petitioner's motion for a new trial.[22] The Michigan Court of Appeals denied leave to appeal on August 2, 1990.[23]

14. *People v. Hence, supra* at 164–165, 312 N.W.2d 191.

15. *People v. Hence, supra.*

16. *People v. Hence and Gallagher*, Wayne County Circuit # 79–911862–FM, pp. 1–43.

17. *People v. Gallagher*, 116 Mich.App. 283, 323 N.W.2d 366 (1982).

18. Petitioner's Brief, p. 134.

19. *People v. Hence*, 422 Mich. 9959 (1985).

20. See Affidavit of Norman Wayne Robinson, dated August 31, 1987.

21. *People v. Hence*, Michigan Court of Appeals # 109011, November 23, 1988.

22. *People v. Hence*, Wayne Circuit # 79–911862–FM, October 16, 1982.

23. *People v. Hence*, Michigan Court of Appeals, 122666.

The Michigan Supreme Court rejected petitioner's application for leave to appeal on April 29, 1991.[24]

Petitioner has filed this application for a writ of habeas corpus on numerous grounds, which have been consolidated into six different issues:

I. DID THE PROSECUTOR VIOLATE PETITIONER'S DUE PROCESS RIGHTS BY WITHHOLDING POTENTIALLY EXCULPATORY EVIDENCE THAT AN ALTERNATIVE SUSPECT MAY HAVE ORDERED THE KILLING OF LEON SOMMERS?

II. WAS PETITIONER DENIED RELIEF FROM HIS CONVICTION BY EITHER THE MICHIGAN TRIAL OR APPELLATE COURTS BECAUSE OF HIS RACE AND ECONOMIC STATUS, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE?

III. WAS PETITIONER DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN HIS POST–CONVICTION PROCEEDINGS?

IV. DID THE STATE COURTS ERR IN DENYING PETITIONER A NEW TRIAL WHERE PETITIONER PRESENTED NEWLY DISCOVERED EVIDENCE IN THE FORM OF NORMAN WAYNE ROBINSON'S AFFIDAVIT, IN WHICH ROBINSON RECANTED HIS TRIAL TESTIMONY?

V. DID THE STATE TRIAL COURT ERR IN ALLOWING AN UNENDORSED WITNESS TO TESTIFY AND IN ALLOWING THE PROSECUTOR TO PRESENT WITNESSES TO REBUT PETITIONER'S ALIBI DEFENSE, WHEN THE WITNESSES HAD NOT BEEN ON THE PROSECUTOR'S ALIBI REBUTTAL WITNESS NOTICE?

VI. WAS PETITIONER DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL ATTORNEY?

For the reasons stated below, the petition is denied.

## II. Standard of Review

Review of a state court's decision under 28 U.S.C. § 2254 is governed by the standards established by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 26, 1996). The Act altered the standard of review that a federal court must use for writs of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio,* 128 F.3d 322, 326 (6th Cir.1997); *cert. den.* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless convincing evidence is offered to rebut this presumption. *Warren v.. Smith,* 161 F.3d 358, 360–361 (6th Cir.1998); 28 USC 2254(e)(1).

■■■ The applicable standard of review of a habeas petition seeking review of a state court decision, under the AEDPA, is guided by whether the petition presents a question of law, a question of fact, or a

**24.** *People v. Hence,* Michigan Supreme Court, Docket # 89866

mixed question of law and fact. *Nevers v. Killinger,* 990 F.Supp. 844, 851 (E.D.Mich. 1997). The reasonable determination of federal law by a state court, precluding relief under the AEDPA, is one which is consistent with the facts and circumstances of the case; it is up to federal courts to determine, in light of the facts and the applicable law, whether the state court decision was reasonable. *Nevers v. Killinger, supra* at 852. If the federal court disagrees with the state court's application of federal law, or if it finds that the state court unreasonably applied federal law, the federal court must grant habeas relief under the A.E.D.P.A. *Nevers v. Killinger, supra* at 853.

### III. *Discussion*

I. DID THE PROSECUTOR VIOLATE PETITIONER'S DUE PROCESS RIGHTS BY WITHHOLDING POTENTIALLY EXCULPATORY EVIDENCE THAT AN ALTERNATIVE SUSPECT MAY HAVE ORDERED THE KILLING OF LEON SOMMERS?

Petitioner first alleges that the prosecutor withheld from the defense evidence that another person, known as "B.S." may have ordered the killing, rather than Gallagher. Petitioner contends that this evidence would have been exculpatory and the withholding of this evidence denied petitioner a fair trial.

 Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The defendant's failure to request favorable evidence does not leave the prosecution free of its obligation to disclose exculpatory evidence to the defendant under the *Brady* doctrine. *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Impeachment evidence, as well as exculpatory evidence falls within the scope of the *Brady* doctrine. *O'Guinn v. Dutton,* 88 F.3d 1409, 1419 (6th Cir.1996); *cert. den.* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997).

 In determining whether evidence that the government withheld is material, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The defendant therefore shows a violation of the *Brady* doctrine when he shows that the favorable evidence could reasonably be taken to put the whole case in such a different light so as to undermine confidence in the verdict. *Kyles v. Whitley, supra* at 435, 115 S.Ct. 1555.

 In determining whether the prosecutor's failure to disclose evidence to the defense deprived the defendant of a fair trial, the proper standard of materiality of undisclosed evidence is that if the omitted evidence creates a reasonable doubt that otherwise did not exist, constitutional error has been committed. *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). However, if there is no reasonable doubt about the defendant's guilt whether or not the additional evidence is considered, there is no justification for a new trial. *United States v. Agurs,* 427 U.S. 97, at 113, 96 S.Ct. 2392.

Petitioner contends that the prosecutor withheld exculpatory evidence in the form of evidence that another person besides Gallagher may have hired Edmonds to have Sommers killed. Petitioner also argues that when the Wayne Circuit Court granted co-defendant Gallagher a new trial, it made a finding that the prosecutor withheld exculpatory evidence, which this Court should be bound by.

This Court first notes after reviewing the opinions of both Judge Baum and the Michigan Court of Appeals that the pri-

mary rationale for granting a new trial for Gallagher was based upon ineffective assistance of counsel due to his attorney having had a longstanding personal and professional relationship with this alternate suspect. The Michigan Court of Appeals' ruling was based solely on an ineffective assistance of counsel claim and did not discuss any *Brady* violations on the part of the prosecutor.[25] The only finding that the trial court made concerning the prosecutor's involvement in suppressing this evidence was that the prosecution withheld from the jury evidence that the person referred to by some witnesses at trial as "Swanson" was in actuality "B.S." There was no finding by the trial court that the prosecutor knew of evidence linking "B.S." to this killing or withheld it from the defense.[26]

■ Moreover, the state court's determination that evidence that a person other than Gallagher may have ordered the killing was not material to petitioner's defense was not an unreasonable determination based upon the facts in this case. With respect to the conspiracy to commit murder conviction, there was no evidence presented that Gallagher and petitioner ever knew one another or discussed the killing. However, there was still evidence presented that petitioner had conspired with Edmonds and Robinson to kill Sommers. Once a conspiracy has been proven to exist, it is not necessary to show that the defendant knew every member of the conspiracy or even knew the full extent of the enterprise. *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir.1998).

The mere fact that another person besides Gallagher may have ordered Sommers' killing does not negate petitioner's guilt in this matter. In *Hopkinson v. Shillinger*, 648 F.Supp. 141, 143 (D.Wyo.1986); aff'd 866 F.2d 1185 (10th Cir.1989); cert. den. 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990), the U.S. District Court for the District of Wyoming held that the alleged suppression by a state prosecutor in a murder case of allegedly exculpatory evidence concerning the murder victim's investigation of a million dollar "scam" and threats by a third party that he would get even with the victim did not involve evidence which might have affected the outcome of the trial or would have created a reasonable doubt that did not otherwise exist, so as to entitle petitioner to relief, where the substantial amount of evidence against the petitioner supported the conclusion that there was no reasonable probability that, had this evidence been disclosed to the defendant, the result in the proceeding would have been different.

In the present case, this Court concludes, in light of the substantial amount of evidence against petitioner, that there is not a reasonable probability that, had this evidence regarding "B.S." been presented to the defense, the result at trial would have been different. Two witnesses testified that petitioner took part in the planning and execution of this killing. Although petitioner spends eighty three pages detailing the discrepancies in the testimony of these witnesses, their testimony was corroborated by the fact that, at the time of his arrest, petitioner was in possession of the briefcase which Edmonds and Robinson stated that petitioner had in his possession at the time of the meeting to discuss Sommers' killing as well as the gun which petitioner had in his possession both at the meeting and at the time of the shooting. Petitioner was also in possession of a digital watch similar to the one taken from the victim's house. When arrested by the Georgia State Police, petitioner escaped from their patrol car and attempted to flee. Evidence of flight by the accused is generally admissible as evidence of guilt. *United States v. Gaitan–Acevedo*, 148 F.3d 577, 588 (6th Cir.1998); cert. den. —— U.S. ——, 119 S.Ct. 256, 142 L.Ed.2d 210 (1998). Given the substantial amount of interlocking evidence

**25.** See *People v. Gallagher*, 116 Mich.App. 283, 323 N.W.2d 366 (1982).

**26.** *People v. Hence*, 79–911862–FM, pp. 23, 78–80.

against petitioner, this Court concludes that there is not a reasonable probability that petitioner would have been acquitted had evidence involving "B.S." been disclosed to the defense. The state courts' determination that petitioner had not been denied a fair trial was not unreasonable. Petitioner's first claim must fail.

## II. WAS PETITIONER DENIED RELIEF FROM HIS CONVICTION BY EITHER THE MICHIGAN TRIAL OR APPELLATE COURTS BECAUSE OF HIS RACE AND ECONOMIC STATUS, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE?

Petitioner next claims that the Michigan trial and appellate courts refused to grant him relief from his conviction, as they did Gallagher, because he is African–American and poor and Gallagher is wealthy and Caucasian. The only evidence petitioner offers to this Court, however, is the fact that Gallagher's conviction was overturned and his has been affirmed.

■ A federal habeas court will reject a claim that racial bias accounts for a state appellate court's decisions where a habeas petitioner offers no evidence of discriminatory intent required to prove a denial of due process. *Andrews v. Shulsen,* 802 F.2d 1256, 1270 n. 11 (10th Cir.1986); *cert. den.* 485 U.S. 919, 108 S.Ct. 1091, 99 L.Ed.2d 253 (1988). Where a habeas petitioner alleging racial bias on the part of a trial or appellate court does not allege facts which even remotely support his claim, but merely recounts the rulings by the courts, he or she has not made a claim upon which habeas relief can be granted. *Harris v. Marshall,* LEXIS 16852 (N.D.Cal.1992). Actions and comments which do not reflect racial bias do not violate the right to an impartial tribunal. *Lang v. Callahan,* 788 F.2d 1416 (9th Cir. 1986).

■ In the present case, the only evidence of racial or economic bias offered by petitioner is the fact that the Michigan courts overturned Gallagher's conviction but not his. However, as the respondent

correctly points out, Gallagher and petitioner were not similarly situated. There was no finding that petitioner's trial counsel was laboring under the same conflict of interest as Gallagher's attorney was, nor would the mere fact that another person may have ordered the killing of Sommers exculpate petitioner, who was accused of shooting the victim, as it did Gallagher, who had been accused of ordering the shooting. In reviewing the court opinions in both Gallagher's and petitioner's cases, this Court finds that the state court rulings were made solely on the basis of the facts presented and the law and not upon any impermissible racial or economic reasons. Because petitioner has offered no concrete evidence of racial or economic bias on the part of the Michigan courts in ruling upon his case, he has failed to state a claim upon which habeas relief can be granted. Petitioner's second claim is rejected by this Court.

## III. WAS PETITIONER DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN HIS POST–CONVICTION PROCEEDINGS?

Petitioner next claims that the attorney appointed to represent him in his post-conviction proceedings in the Michigan trial and appellate courts was ineffective. Petitioner has failed to state a claim upon which federal habeas relief can be granted.

■ There is no constitutional right to an attorney in a state post-conviction proceeding; consequently, a habeas petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Abdur'Rahman v. Bell,* 999 F.Supp. 1073, 1084 (M.D.Tenn.1998). Where there is no constitutional right to counsel, there can be no deprivation of effective assistance. *Wainwright v. Torna,* 455 U.S. 586, 587–588, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982).

Because petitioner had no constitutional right to the assistance of counsel in his post-conviction proceedings, his claim that his attorney was ineffective in represent-

ing him in his post-conviction motion and appeal in Michigan does not entitle him to relief from this Court. Petitioner's third claim must fail.

## IV. DID THE STATE COURTS ERR IN DENYING PETITIONER A NEW TRIAL WHERE PETITIONER PRESENTED NEWLY DISCOVERED EVIDENCE IN THE FORM OF NORMAN WAYNE ROBINSON'S AFFIDAVIT, IN WHICH ROBINSON RECANTED HIS TRIAL TESTIMONY?

Petitioner next contends that the state trial court erred in denying his motion for a new trial based upon newly discovered evidence in the form of Norman Robinson's affidavit, in which Robinson recanted his earlier testimony against petitioner. Petitioner claims that this evidence supports his claim of innocence.

A claim of actual innocence based upon newly discovered evidence is not grounds for federal habeas relief. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *J.C. Dickey v. Dutton*, 595 F.Supp. 1, 2 (M.D.Tenn. 1983). The refusal of a state trial judge to credit a co-defendant's repudiation of testimony implicating a habeas petitioner did not raise any constitutional errors cognizable in a habeas corpus proceeding. *Collins v. Brierley*, 336 F.Supp. 1024, 1025 (W.D.Pa.1971); *rev on other grds* 492 F.2d 735 (3rd Cir.1974); *cert. den.* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974). The posttrial recantation of an accomplice witness also does not warrant habeas relief since such evidence goes to the merits of the conviction, not its legality. *Smith v. Wainwright*, 741 F.2d 1248, 1257 (11th Cir. 1984); *cert. den.* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985). A partial recantation of a witness' testimony is also not sufficient to grant habeas relief. *Wainwright v. Lockhart*, 80 F.3d 1226, 1229 (8th Cir.1996); *cert. den.* 519 U.S. 968, 117 S.Ct. 395, 136 L.Ed.2d 310 (1996).

In the present case, petitioner presented an affidavit signed by Robinson some eight years after petitioner's trial, in which he recanted his testimony. However, at the evidentiary hearing, Robinson refused to recant his testimony and reaffirmed his trial testimony as true, although he did acknowledge that he had signed the affidavit. Because Robinson refused to recant his testimony at the hearing, there was no new evidence presented to support a new trial for petitioner and the trial court properly denied the motion.

Petitioner claims, however, that he was denied a fair evidentiary hearing on his motion for a new trial because the judge adjourned the hearing to appoint counsel to advise Robinson. He also claims that the prosecutor put pressure on Robinson not to recant his testimony by threatening him with a perjury prosecution. The prosecution was also able to ask Robinson if he had been threatened into signing the affidavit.

A trial judge does not violate a defendant's Sixth and Fourteenth Amendment rights when it informs a witness who wishes to recant his or her earlier testimony against the defendant of the penalties of perjury and the desirability of consulting with counsel, even if this leads to the witness declining to testify and invoking his or her Fifth Amendment right against self-incrimination after discussing the matter with counsel. *Culkin v. Purkett*, 45 F.3d 1229, 1232 (8th Cir.1995); *cert. den.* 516 U.S. 842, 116 S.Ct. 127, 133 L.Ed.2d 76 (1995). Similarly, a prosecutor does not attempt to intimidate a defense witness by warning him or her, even in an offensive manner, of the consequences of testifying, where the prosecutor simply tells a witness that if he or she testifies falsely, such testimony would support a perjury indict-

ment. *United States v. Whittington*, 783 F.2d 1210, 1219 (5th Cir.1986); *cert. den.* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986). A prosecutor is always entitled to attempt to avert perjury and to punish criminal conduct. *United States v. Viera*, 839 F.2d 1113, 1115 (5th Cir.1988). In addition, a prosecutor who believes that a recanting witness had been intimidated into changing testimony is free to ask that witness whether he or she has been threatened. *United States v. Thomas*, 875 F.2d 559, 562 (6th Cir.1989).

Petitioner lastly alleges that the trial judge would not allow his counsel to question Robinson about his motive for signing what he was now claiming to be a false affidavit, although counsel was able to get Robinson to acknowledge that he had signed the affidavit in which he recanted his testimony. Robinson, however, had elected to exercise his Fifth Amendment right against self-incrimination. In light of the fact that Robinson chose not to testify further, the trial court did not err in refusing to allow counsel to question Robinson deeply about his reasons for signing the affidavit. In any event, counsel was able to produce the affidavit and get Robinson to admit that he had signed it. The trial court had the affidavit before it and made a determination that it was not true after hearing Robinson's testimony. Recantations by prosecution witnesses are typically viewed with the "utmost suspicion". *United States v. Kearney*, 682 F.2d 214, 219 (D.C.Cir. 1982).

Because the posttrial recantation of a prosecution witness does not afford a basis for habeas relief, petitioner has failed to state a claim upon which relief can be granted, particularly where Robinson refused to recant his testimony. His fourth claim is rejected by the Court.

## V. DID THE STATE TRIAL COURT ERR IN ALLOWING AN UNENDORSED WITNESS TO TESTIFY AND IN ALLOWING THE PROSECUTOR TO PRESENT WITNESSES TO REBUT PETITIONER'S ALIBI DEFENSE, WHEN THE WITNESSES HAD NOT BEEN ON THE PROSECUTOR'S ALIBI REBUTTAL WITNESS NOTICE?

Petitioner claims that the trial court erred in allowing the prosecution to call Norman Wayne Robinson to testify, even though he had not been endorsed as a witness on the prosecutor's witness list, as required by M.C.L.A. 767.40; M.S.A. 28.980. Petitioner claims that his defense was particularly prejudiced because the prosecutor indicated at the beginning of trial that it would not be calling Robinson to testify. Petitioner also claims that the trial court erred in allowing the prosecutor to call two alibi rebuttal witnesses that the prosecutor had not placed on their notice of rebuttal, as required by M.C.L.A. 768.20(2); M.S.A. 28.1043(2).

### A. *Standard of Review.*

■ To the extent that the admission of this evidence violates state law only, petitioner would not be entitled to federal habeas relief. Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not grounds for federal habeas relief. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Habeas relief will not lie for mere errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 765, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). In reviewing a state court judgment, a federal habeas court does not act as a super state supreme court. *Kelly v. Withrow*, 822 F.Supp. 416, 420 (W.D.Mich.1993); *aff'd* 25 F.3d 363 (6th Cir.1994); *cert. den.* 513 U.S. 1061, 115 S.Ct. 674, 130 L.Ed.2d 607 (1994). Federal courts do not act as an additional state appellate court to review a state court's interpretation of its own law and procedure. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir.1987). To the extent that the trial court's rulings regarding the ad-

mission of this testimony may have violated state rules of evidence, it does not entitle petitioner to federal habeas relief.

## B. *The prosecution's failure to endorse Norman Wayne Robinson.*

With respect to petitioner's first claim, numerous cases have held that the state's failure to endorse a witness prior to calling that witness to testify does not violate any federal constitutional right and is not grounds for federal habeas relief. *Mitchell v. Wyrick*, 698 F.2d 940, 943 (8th Cir. 1983); *cert. den.* 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983); *Drews v. State of Minnesota*, 407 F.2d 1307, 1309 (8th Cir.1969); *Winkler v. Solem*, 525 F.Supp. 117, 120 (D.S.D.1981); *aff'd* 688 F.2d 594 (8th Cir.1982). It is not a fundamental error to permit a prosecutor to endorse a witness in the course of a trial even though the prosecutor had previously filed an affidavit that such witness did not have material evidence to offer. *Whalen v. Johnson*, 438 F.Supp. 1198 (E.D.Mich. 1977).

 The prosecutor's failure to endorse Robinson as a witness did not deprive petitioner of a federal constitutional right which would afford him a basis for relief in a habeas proceeding. Additionally, any error by the trial court in allowing Robinson to be called to testify was mitigated by the fact that the trial court called for a recess and gave defense counsel time to interview Robinson prior to his testimony and also gave defense counsel the right to recall Robinson later on if he so desired. The Michigan Court of Appeals also ruled that because Robinson was one of the accomplices to the crime, his testimony would have come as no surprise to petitioner.[27]

27. *People v. Hence, supra* at 168, 312 N.W.2d 191.

28. Because petitioner has a Fifth Amendment right against self-incrimination, as well as a

## C. *The Prosecutor's failure to list its rebuttal alibi witnesses on its rebuttal notice.*

Petitioner also claims that the trial court erred in allowing the prosecution to call two alibi rebuttal witnesses even though they had not been put on the prosecution's rebuttal witness list.

 When state law mandates that a defendant must make pre-trial disclosure of his alibi witnesses, then the state is also required to make a pre-trial disclosure of all its rebuttal witnesses. *Wardius v. Oregon*, 412 U.S. 470, 475, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). However, a prosecutor's calling of a rebuttal alibi witness who was not identified prior to trial is not a *Wardius* violation, where the prosecution discovered the identity of the rebuttal witness only after the defendant's last alibi witness testified. The state also does not violate due process by failing to disclose a rebuttal witness prior to trial, where the prosecutor did not know of the rebuttal witness prior to the testimony of the alibi witnesses called by the defendant. *Griffin v. Delo*, 33 F.3d 895, 903–904 (8th Cir. 1994); *cert. den.* 514 U.S. 1119, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995).

 In the present case, petitioner took the stand and testified that he was not at work on the day in question but was at home. It was only after petitioner testified that the prosecutor, now aware of this line of the alibi defense, presented the records keeper from Chrysler Corporation to introduce a time card showing that petitioner had, in fact, worked on the day in question. The Court sees no violation of due process in permitting this witness to testify, when this aspect of petitioner's alibi only became known to the prosecutor when he testified.[28]

Sixth Amendment right to counsel, the prosecutor could not interview him prior to trial, as he could petitioner's other alibi witnesses, to determine what his story would be.

With respect to calling Robinson as a alibi rebuttal witness, this Court finds this to be harmless error in light of the fact that Robinson already had testified in the prosecutor's case-in-chief that petitioner had gone with him to Sommers' house and had shot the victim. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of a federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Stoner v. Sowders*, 997 F.2d 209 (6th Cir. 1993). Calling Robinson as a rebuttal witness by the prosecution was harmless error in light of his earlier testimony against petitioner. Petitioner's fifth claim must therefore fail.

## VI. WAS PETITIONER DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY HIS TRIAL ATTORNEY?

Petitioner claims that his trial counsel was ineffective because he failed to effectively cross-examine Robinson, failed to object to the prosecutor's rebuttal alibi witnesses, failed to investigate whether petitioner had worked on the day he believed he did, and entered the prosecution exhibit involving the digital watch into evidence.

### A. *Standard of Review*

An ineffective assistance of counsel claim is a mixed question of law and fact in a habeas proceeding and is not subject to the statutory presumption of correctness attending state court findings of fact. *Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir.1992). Because ineffective assistance of counsel claims are a mixed question of fact and law, a state court determination on the issue is reviewed de novo by a federal habeas court. *Groseclose v. Bell*, 130 F.3d 1161, 1164 (6th Cir. 1997); *cert. den.* — U.S. ——, 118 S.Ct. 1826, 140 L.Ed.2d 962 (1998).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must demonstrate that, considering all of the circumstances, counsel's performance fell below the objective standard of reasonableness and so prejudiced defendant that he was denied a fair trial and a reasonable probability exists that, but for counsel's conduct, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 669, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of counsel's performance must be highly deferential. Courts presume that an attorney is competent and the burden rests upon the defendant to show a constitutional violation. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir.1995). A strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994). Petitioner must also overcome the presumption that under the circumstances, the challenged action might be sound trial strategy. *Strickland v. Washington*, 466 U.S. 668 at 689, 104 S.Ct. 2052.

### B. *Failure to Effectively Cross–Examine Robinson.*

Petitioner first claims that his trial counsel failed to effectively cross-examine Norman Wayne Robinson because the trial court several times had to stop counsel and explain to him how to lay a proper foundation for impeaching Mr. Robinson with his prior inconsistent statements.

The failure by trial counsel to cross-examine a prosecution witness can constitute ineffective assistance of counsel. *Williamson v. Reynolds*, 904 F.Supp. 1529 (E.D.Okla.1995); *aff'd sub nom Williamson v. Ward*, 110 F.3d 1508 (10th Cir.1997). In this case, however, the Michigan Court of Appeals determined that trial counsel cross-examined Robinson thoroughly.[29] Moreover, petitioner's assertion that his trial counsel did not effectively cross-ex-

29. *People v. Hence, supra* at 168, 312 N.W.2d 191.

amine Robinson is belied by the eighty three pages of facts in his brief in which he notes the alleged inconsistencies of Robinson and the other witnesses. Many of these inconsistencies were brought out by his own attorney. Petitioner's claim that counsel's cross-examination was ineffective is not supported by the record.

### C. Counsel's Failure to Object to Alibi Rebuttal Witnesses.

In light of this Court's ruling in Issue 5, *supra*, this Court finds that counsel's failure to object to these witnesses was not ineffective assistance of counsel.

### D. Counsel's Failure to Investigate Exculpatory Evidence.

Petitioner next claims that counsel failed to investigate whether he was, in fact, working at Chrysler on the day in question. It is unclear from the petition whether petitioner is claiming that counsel should have investigated this line of defense to better establish an alibi defense that petitioner was working at the time of the murder, or whether counsel should have investigated whether petitioner was working on the day of the killing to prevent petitioner from testifying that he did not work on the day of the killing.

▮ Petitioner contends that his counsel had a duty to independently contact Chrysler to determine whether he had worked on May 11, 1978, even though petitioner concedes he had informed counsel that he had not worked that day. Since investigation and preparation are keys to effective representation, attorneys have a duty to interview potential witnesses and "make an independent examination of the facts, circumstances, pleadings, and laws involved." *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir.1979) (citing *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948)). However, strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. "In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that make particular investigation unnecessary." *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir.1993). In any case involving allegations of ineffectiveness of counsel, a decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a "heavy measure of deference" to counsel's judgments. *Lewis v. Alexander, supra* at 1352. A distinction can be made between cases where there was a total failure by counsel to investigate and those cases where the defendant is merely dissatisfied with the degree of his attorney's investigation into possible defenses. *Lewis v. Alexander, supra* at 1353.

When the facts that support a potential line of defense are known to counsel because of what the defendant has told counsel, the need for further investigation may be considerably diminished or eliminated altogether. *Fretwell v. Norris*, 133 F.3d 621, 627 (8th Cir.1998); *cert. den.* —— U.S. ——, 119 S.Ct. 115, 142 L.Ed.2d 92 (1998).

▮ In the present case, petitioner had informed counsel that he was not working on the day of the shooting. Because counsel had been informed by petitioner that he had not been working on the day in question, counsel's decision not to further investigate the issue was not ineffective, particularly if petitioner is merely alleging that counsel should have verified this fact so as to prevent petitioner from testifying in a contrary manner at trial.

To the extent that petitioner is alleging that evidence that he was working at Chrysler the day of the shooting was exculpatory, trial counsel's failure to investigate the fact that petitioner was working on the day of the killing was harmless because this evidence was presented at trial, albeit by the prosecution.

### E. Trial Counsel's admission of the digital watch into evidence.

Petitioner lastly claims that his counsel was ineffective because he moved for ad-

mission of a prosecution exhibit, i.e., the digital watch taken from him at the time of arrest, into evidence.

This Court finds that trial counsel was not ineffective for moving for the admission of the watch into evidence where petitioner and his wife testified that the watch belonged to petitioner and had been purchased by him. Moreover, even if the digital watch had not been admitted into evidence, the jury still heard testimony that a digital watch had been stolen from the victim's home and that the police had seized a digital watch from petitioner at the time of his arrest. The admission of this exhibit by trial counsel was therefore not ineffective.

F. *Petitioner has failed to show prejudice from any of counsel's errors in light of the evidence presented against him at trial.*

In order to prevail on an ineffective assistance of counsel claim, petitioner must show that trial counsel's deficient performance prejudiced the defense. *Strickland v. Washington, supra.* In light of the evidence presented against petitioner at trial, he has failed to show prejudice. Two different witnesses testified that petitioner took part in the planning of Sommers' murder. One of these witnesses testified that petitioner actually shot the victim. Although petitioner goes to great lengths to detail purported inconsistencies between the testimony of these witnesses, their testimony was corroborated by the fact that at the time of his arrest, petitioner was in possession of the briefcase and revolver that these witnesses had described him having at the meeting when they planned and later executed the murder. Petitioner was also in possession of a digital watch at the time of his arrest, similar to the one taken from the victim at the time of his murder. Lastly, when arrested by the police in Georgia, petitioner escaped from their police car and attempted to flee. In light of the overwhelming evidence of guilt, petitioner has failed to establish that, but for these alleged errors by counsel, he would have

been found not guilty. Petitioner's last claim must fail.

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

## *JUDGMENT*

The above entitled matter having come before the Court on a Petition for Writ of Habeas Corpus, Honorable Paul V. Gadola, a United States District Judge, presiding, and in accordance with the Memorandum Opinion and Order entered on Feb. 10th, 1999.

IT IS ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus be, and the same hereby is, DENIED.